The PEOPLE of the State of Colorado, Petitioner,

In the Interest of S.J.C. and K.E.C., Minor Children,

and Concerning K.W.C., Respondent.

No. 89SA65.

Supreme Court of Colorado, En Banc.

July 24, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Wendy J. Ritz, Asst. Atty. Gen., Appellate Section, Denver, and Gregory F. Long, Grand County Dist. Atty., Hot Sulphur Springs, for petitioner.

Ellen S. Roberts, Granby, guardian ad litem for S.J.C. and K.E.C.

Atwater, Blodgett & Ruppert, Paul C. Blodgett, Winter Park, for respondent.

VOLLACK, Justice.

K.W.C. (respondent) appeals[1] the decision of the Grand County District Court terminating his parent-child relationship with two of his natural children. He argues that section 19–3–604(1)(b)(I), 8B C.R.S. (1988 Supp.), is unconstitutional because the term "emotional illness" is vague. We affirm the judgment of the district court.

I.

The sequence of events leading to this appeal is based on testimony at the hearing on the motion to terminate respondent's parental rights.

The Grand County Department of Social Services (Department) first became involved with the respondent's family in December 1984, in response to a complaint that the home was dirty and unhealthy for the one-year-old child and newborn infant. The Department confirmed that the home was dirty. The respondent and his first wife agreed to clean the home. Six days later, the Department responded to a complaint of a family disturbance in which the respondent threatened suicide after finding his first wife in the company of other men. Although mental health professionals were notified, the Department was more concerned for the welfare of the two children. The Department continued its contact with the respondent's family throughout 1985 and the first part of 1986. The Department provided day-care assistance to the children and responded to further complaints that the home was filthy, the children were dirty and wore soiled clothing.

The respondent and his first wife were divorced in October 1985. The respondent was awarded custody of the children. The Department placed the children in temporary protective custody in May 1986 after the respondent was hospitalized and unable

1. Jurisdiction in this court is present pursuant to section 16–12–101, 8A C.R.S. (1986), and section 13–4–102(1)(b), 6A C.R.S. (1987).

to care for the children. At that time a dependency and neglect petition was filed because the children were again found to be wearing soiled clothes and living in filth, and were diagnosed as anemic. A voluntary settlement was later reached by which the petition would be dropped if the respondent attended a nutrition, health, and hygiene class. The respondent substantially complied with the terms of the settlement and by September 1986 the children were returned to his custody under the Department's supervision.

In January 1987, the respondent left the county with the two children in the company of a woman named Valerie and an infant who was later determined to be the offspring of Valerie and the respondent. The respondent was ordered to return to the county and the children were again placed in foster care under the custody and supervision of the Department.

The respondent married Valerie in March 1987, got a job, and maintained supervised contact with the children.

A parent-child interaction evaluation was conducted by Kathleen Henken, a licensed social worker. The children were adjudicated dependent and neglected in September 1987. The respondent was ordered to undergo a psychiatric evaluation in December 1987. The evaluation was conducted by Dr. Seymour Z. Sundell, a forensic psychologist. In April 1988, a motion to terminate the parental rights of the respondent and his former wife was filed in the Grand County District Court. The motion alleged that the children had been adjudicated dependent and neglected, that a treatment plan had been ordered, that no treatment was possible in the future, and that the respondent had suffered from emotional illness of such a nature and duration as to render him unlikely within a reasonable time to care for the children's needs. A hearing on the motion to terminate parental rights was scheduled.

The respondent moved to dismiss the case in May 1988 on the ground that the term "emotional illness" in section 19–3–604(1)(b)(I) was unconstitutionally vague. Section 19–3–604(1)(b)(I) states:

(1) The court may order a termination of the parent-child legal relationship upon the finding of any one of the following:

. . . .

(b) That the child is adjudicated dependent or neglected and the court has found by clear and convincing evidence that no appropriate treatment plan can be devised to address the unfitness of the parent or parents. In making such a determination, the court shall find one of the following as the basis for unfitness:

(I) *Emotional illness,* mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely within a reasonable time to care for the ongoing physical, mental, and emotional needs of the child[.]

8B C.R.S. (1988 Supp.) (emphasis added). The district court denied respondent's motion to dismiss but agreed to reconsider the motion after hearing the evidence.

Two mental health professionals testified at the respondent's hearing to terminate parental rights. Dr. Sundell found no evidence of such mental illnesses as psychosis, schizophrenia, or manic depression. He found, however, that the respondent was suffering from a "mixed personality disorder" related to feelings of narcissism,[2] inadequacy and passivity, and that the respondent's emotional condition was exacerbated by episodic alcohol usage. He believed that alcohol treatment alone would not cure respondent because of his underlying emotional condition.

Kathleen Henken, a clinical social worker, evaluated the respondent with his two children. She concluded that the respondent was suffering from an emotional illness and that the children had special emotional and physical needs that made it particularly unlikely for the respondent to be able to care for the children for a minimum of five years. She believed the respondent's parental rights should be terminated.

---

**2.** As described by Ms. Henken, narcissism in this context refers to an inability to appreciate, much less address, the needs of others because of a self-centered vision of the world.

Both Dr. Sundell and Ms. Henken believed the term "emotional illness" to be an unhelpful term to persons with a background in mental health evaluations. Dr. Sundell stated that the term "emotional illness" was not a medical term of art but a lay term that "means whatever it is defined to mean in the context in which it is used." He cited as a hypothetical example that a lay magazine such as *Psychology Today* could conclude that 37% of the American population suffers from emotional illness by including persons suffering temporary problems such as loss of jobs or loved ones, while the same magazine could conclude that only 2% of the American population suffers from emotional illness by including only persons suffering from what are traditionally considered "the true core psychiatric illnesses such as schizophrenia, [and] manic depressive disorders." Dr. Sundell stated that the term "emotional illness" was a term that created confusion to mental health professionals, but concluded that mixed personality disorders could be construed as "emotional illness" and stated that the "operational definition" of section 19–3–604(1)(b)(I) provided a standard for him to determine that the respondent's condition qualified as "emotional illness."

Ms. Henken agreed with Dr. Sundell that the term "emotional illness" is a lay term "that for mental health professionals is too broad and vague to be helpful in [their] context of evaluation and treatment." Like Dr. Sundell, however, she also concluded that the respondent suffered from an emotional illness as used in section 19–3–604(1)(b)(I).

At the close of evidence, the respondent again moved to dismiss on the ground that the statute was void for vagueness. The trial court again denied the motion to dismiss. It concluded by clear and convincing evidence that the children had been adjudicated dependent or neglected; that no appropriate treatment plan could be devised to address the respondent's unfitness; that the respondent was suffering from an emotional illness; and that his emotional illness was of such nature and duration as to render the respondent unable within a reasonable time to care for the ongoing physical, mental, and emotional needs of the two children.

This direct appeal followed.

## II.

Although the predecessor to section 19–3–604 was found not to be facially vague, *see People in Interest of M.S.H.,* 656 P.2d 1294 (Colo.1983), we have not expressly addressed the constitutionality of the term "emotional illness" in our parental rights termination statute. We note, however, that the phrase "emotional illness" has withstood vagueness challenges in parental rights termination statutes in other jurisdictions. *See Thompson v. Arkansas Social Servs.,* 282 Ark. 369, 669 S.W.2d 878 (phrases "mental illness" and "emotional illness" not void for vagueness in statute terminating parent-child relationship of parent who suffers from "[l]ongstanding and uncontrollable mental or emotional illness or mental deficiency"), *appeal dismissed,* 469 U.S. 926, 105 S.Ct. 316, 83 L.Ed.2d 254 (1984); *see also State ex rel. Juvenile Dep't v. Wade,* 19 Or.App. 314, 324–26, 527 P.2d 753, 758 (1974) (phrases "mental illness" and "mental deficiency" not void for vagueness in statute terminating parent-child relationship for "[e]motional illness, mental illness or mental deficiency of the parent of such duration as to render it impossible to care for the child for extended periods of time"), *appeal dismissed,* 423 U.S. 806, 96 S.Ct. 16, 46 L.Ed.2d 27 (1975), *rev'd on other grounds sub nom. In re D.,* 24 Or.App. 601, 547 P.2d 175, *cert. denied sub nom. C. v. F.,* 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed.2d 189 (1976).

The term "emotional illness," unlike "mental illness" and "mental deficiency," is not defined by Colorado statute.[3] But, as

---

**3.** The Interstate Compact on Mental Health, §§ 24–60–1001 to –1006, 10B C.R.S. (1988), defines "mental illness" as "mental disease to such extent that a person so afflicted requires care and treatment for his own welfare, or the welfare of others, or of the community." It defines "mental deficiency" as "mental deficiency as defined by appropriate clinical authorities to

Dr. Sundell stated, although the term "emotional illness" is a lay term covering a broad range of emotional impairment, it does have meaning within the context of section 19–3–604(1)(b)(I). "Emotional illness" excludes such disorders as schizophrenia, psychosis, and manic depression. This follows from inclusion of the term "mental illness" in section 19–3–604(1)(b)(I) and the rule of statutory construction that a statute must be construed if possible to give effect to all of its parts. 2A N. Singer, *Statutes and Statutory Construction* § 46.06, at 104 (4th ed. 1984); *Colorado Gen. Assembly v. Lamm,* 700 P.2d 508, 517 (Colo.1985); § 2–4–201(1)(b), 1B C.R.S. (1980). "Emotional illness" also excludes short-term emotional conditions caused by such temporary problems as loss of loved ones or loss of job. This follows from the language of section 19–3–604(1)(b)(I), which by its terms is limited to emotional illness "of the parent *of such duration or nature* as to render the parent unlikely within a reasonable time to care for the ongoing physical, mental, and emotional needs of the child." (Emphasis added.)

The respondent challenges the constitutionality of the term "emotional illness" in section 19–3–604(1)(b)(I) as vague on its face. We conclude that the respondent's facial challenge fails because the statute is not vague as applied to him.

A vagueness challenge to a statute not implicating first amendment rights must be examined in light of the case at hand. *United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975). If a statute "has a core meaning that can reasonably be understood, then it may validly be applied to conduct within the core meaning, and the possibility of such a valid application necessarily means that the statute is not vague on its face." *Brache v. County of Westchester,* 658 F.2d 47, 51 (2d Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1643, 71 L.Ed.2d 874 (1982); *accord Smith v. Goguen,* 415 U.S. 566, 577–78, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974).

The evidence produced at the termination hearing shows that the respondent's conduct clearly falls into the core meaning of the statutory term "emotional illness." Ms. Henken described the respondent's emotional condition as an "inability to move outside of himself and his own wants and needs" to provide for the physical and emotional needs of his children. She stated:

[The respondent] does not see anything outside of himself. Indeed, he is like a small child for whom the world revolves around him. Therefore, he can't parent, he can't do many things because it's all me-oriented. The first thing that would have to happen is for him to be able to acknowledge that there is an other, whether it be society with its rules, which he cannot acknowledge at this point in time, whether it be adults with whom he has relationships, who have their own wants and needs, and then finally to be able to acknowledge children, who have still different wants and needs. That process, to be able to acknowledge the other, would take several years, if at all possible. And again, I'm not sure it's possible.

And when I say that too, I'm talking about a kind of treatment program, that five days a week, kind of intense psychotherapy. So once he gets to the point of acknowledging there is an other, he is going to have to work to reconcile how he can behave in order to kind of keep things stable with that other, so that he can get his needs met, and he will figure learning that out, learning, being able to do that is by understanding what the other person wants. Very slowly and after a prolonged period of time, he may be able to determine what he could do to meet other people's needs.

Dr. Sundell described the respondent's narcissistic emotional condition as "very longstanding, ongoing lifestyle difficulties" that are unlikely to change. He stated that the respondent's emotional condition was further complicated by alcohol abuse. Like Ms. Henken, Dr. Sundell stated that the

such extent that a person so afflicted is incapable of managing himself and his affairs, but

shall not include mental illness as defined herein."

respondent's inability to appreciate that he had an emotional illness would prevent him from recovering in the near future and explained his frequent relapses into self-centered behavior.

Based on this evidence, we conclude that the respondent's conduct clearly falls into the core meaning of the term "emotional illness." Section 19–3–604(1)(b)(I) applies to him, and his facial challenge therefore fails.

The judgment of the court is affirmed.