**The PEOPLE of the State of Colorado, Petitioner–Appellee,**

**In the Interest of K.D., a Child,**

**and**

**Concerning K.S., a/k/a B.D., Respondent–Appellant.**

**No. 06CA1916.**

Colorado Court of Appeals, Div. II.

Feb. 8, 2007.

Certiorari Denied March 26, 2007.

§ 24–51–1105, C.R.S.2006.

Maurice Lyle Dechant, County Attorney, David Frankel, Assistant County Attorney, Andrea Nina Atencio, Assistant County Attorney, Grand Junction, Colorado, for Petitioner–Appellee.

Kellie L. Starritt, Guardian Ad Litem.

Rennard E. Hailey, Grand Junction, Colorado, for Respondent–Appellant.

Opinion by Judge ROTHENBERG.

K.S. (father) appeals from the judgment terminating his parent-child legal relationship with his son, K.D. We affirm.

In 2001, K.D. was removed from his parents' care by the Mesa County Department of Human Services (the department) because the parents had neglected him, had used drugs, and had engaged in domestic violence. In 2004, he was removed again because both of his parents were incarcerated. However, after both of these removals, the parents completed their treatment plans, and K.D. was returned to their care.

In 2005, father was arrested again, and the mother was incarcerated. Accordingly, the department removed K.D. again from his parents' care and filed the petition on his behalf in this case. The mother's parental rights to K.D. were eventually terminated, and she is not a party to this appeal.

Because father asserted he is Native American, the court instructed the department to notify the Citizen Potawatomi Nation (the CPN) that dependency proceedings had begun. The CPN intervened and did not object to the child's being adjudicated as dependent and neglected. The CPN also requested that the court not offer father another treatment plan, despite his past completion of treatment, because he continued to place K.D. at risk.

The department then filed a motion, pursuant to §§ 19–3–508(1)(e)(I) and 19–3–604(1)(b), C.R.S.2006, asserting that no appropriate treatment plan could be devised for father because he suffered from an emotional illness. The department also sought termination of father's parental rights. Following a hearing, the court granted the motion.

## I.

Father contends the trial court erred in finding that "active efforts" were made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts had proved to be unsuccessful, as required by the Indian Child Welfare Act of 1978, 25 U.S.C. § 1901, et seq. (2000) (ICWA). Father maintains that 25 U.S.C. § 1912(d) mandates that

the court provide him with a treatment plan in the instant proceedings to satisfy the "active efforts" requirement of the statute. We are not persuaded.

Pursuant to 25 U.S.C. § 1912(d), any party seeking to terminate parental rights to an Indian child "shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." "Active efforts" are equivalent to reasonable efforts to provide or offer a treatment plan in a non-ICWA case and must be tailored to the circumstances of the case. *In re Adoption of Hannah S.*, 142 Cal.App.4th 988, 48 Cal.Rptr.3d 605 (2006).

■ A denial of services is not inconsistent with the "active efforts" requirement of the ICWA "if it is clear that past efforts have met with no success." *In re Adoption of Hannah S.*, supra, 142 Cal.App.4th at 998, 48 Cal.Rptr.3d at 612. Although the state must make "active efforts" under the ICWA, it need not "persist with futile efforts." *People in Interest of J.S.B.*, 691 N.W.2d 611, 621 (S.D.2005); *see also People in Interest of P.B.*, 371 N.W.2d 366, 372 (S.D.1985)(a social services department is not charged with the duty of persisting in efforts that "can only be destined for failure").

■ Contrary to father's arguments, we conclude the "active efforts" required by 25 U.S.C. § 1912(d) need not be part of a treatment plan offered as part of the current dependency proceedings. A department may engage in "active efforts" by providing formal or informal efforts to remedy a parent's deficiencies before dependency proceedings begin. *See People in Interest of P.B.*, supra (voluntary services program is sufficient to comply with ICWA's requirement of "active efforts").

■ In other words, the court may terminate parental rights without offering additional services when a social services department has expended substantial, but unsuccessful, efforts over several years to prevent the breakup of the family, and there is no reason to believe additional treatment would prevent the termination of parental rights. *E.A. v. State Div. of Family & Youth Servs.*, 46 P.3d 986 (Alaska 2002); *see also People in Interest of J.S.B.*, supra (court could terminate parental rights without additional services when a social services department has worked with a family for several years, the child had been removed from parental custody three times because of substance abuse related neglect, and the parents continued to use drugs).

Here, the court found, with record support, that "active efforts" were made because of the extensive services provided to father by the department during the previous two dependency cases. The caseworker testified at the hearing that she had created treatment plans for the family during the prior two dependency proceedings that were approved by the court; that previous treatment plans had required father to treat his drug problem, to have his mental health assessed and treated, to address his issues with domestic violence, to remain lawabiding, and to maintain a stable home; that it was an "exercise in futility" to offer another treatment plan; and that it was not in K.D.'s best interests for father to attempt another treatment plan.

There was also evidence that father had been evaluated twice for substance abuse and had received parenting and domestic violence assessments, and that the department had offered the family every available service to complete these plans.

The CPN representative urged the court not to offer father another treatment plan because of the family's history and K.D.'s repeated removal from the home. The representative also testified that "active efforts" had been provided to this family more than once, but had failed to reunify the family.

We therefore conclude there is record support for the trial court's findings that "active efforts" were made in this case to reunite the family, as required by the ICWA, and that it would have been futile to offer additional services to father. Accordingly, we reject father's contention.

## II.

■ Father next contends the termination of his parental rights must be reversed be-

cause there was no expert testimony that continued custody of the child by him would likely result in serious emotional or physical damage to the child, as required by the ICWA. Again, we disagree.

To terminate parental rights, the ICWA requires a court to find beyond a reasonable doubt, including by the testimony of "qualified expert witnesses," that continued custody of the child is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f).

The ICWA does not define "qualified expert witness." But the Guidelines for State Court, Indian Child Custody Proceedings, 44 Fed.Reg. 67,584 (Nov. 26, 1979) (Guidelines), promulgated by the Department of the Interior, state that a person may be an expert if he or she is a professional person having substantial education and experience in the area of his or her specialty. Guidelines, *supra*, 44 Fed.Reg. at 67,593; *People in Interest of R.L.*, 961 P.2d 606 (Colo.App.1998). Although the Guidelines are not binding, they are considered to be persuasive by state courts. *B.H. v. People in Interest of X.H.*, 138 P.3d 299 (Colo.2006).

The Guidelines suggest that persons most likely to meet the requirements for a qualified expert witness would possess special knowledge of Indian culture and society. However, such special knowledge is not required if termination is based on parental unfitness unrelated to Indian culture or society. Under those circumstances, it is sufficient if the witness has substantial education and experience in his or her area of specialty. *People in Interest of A.N.W.*, 976 P.2d 365 (Colo.App.1999); *People in Interest of R.L.*, *supra*.

■ Here, the determination of unfitness supporting the termination was based on father's emotional illness, a consideration that is culturally neutral. Thus, the witness qualified to testify as an expert pursuant to 25 U.S.C. § 1912(f) was not required to have special knowledge of Indian life. It was sufficient that she had substantial education and experience in the area of her specialty. *See* Guidelines, *supra*, 44 Fed.Reg. at 67,593; *People in Interest of R.L.*, *supra*.

A parenting program therapist testified at trial that she had a bachelor's and master's degree in counseling psychology and was a licensed professional counselor in Colorado. The court found she was qualified to testify as an expert in child development and individual and family therapy.

The expert witness called in this case is a professional person with substantial education and experience in her speciality and could properly testify about culturally neutral reasons for termination of parental rights in accordance with the ICWA. *See People in Interest of R.L.*, *supra*. Accordingly, we conclude her testimony that placing K.D. with father would likely result in serious emotional and physical damage is sufficient to support the findings necessary under the ICWA to terminate parental rights. *See People in Interest of R.L.*, *supra*.

### III.

■ Father next contends the trial court erred in finding he had an emotional illness within the meaning of §§ 19–3–508(1)(e)(I) and 19–3–604(1)(b), because the experts who testified about his emotional illness did not interview him. We are not persuaded.

Section 19–3–604(1)(b) provides that a trial court may terminate the parent-child legal relationship if clear and convincing evidence establishes an appropriate treatment plan cannot be devised to address the unfitness of the parent.

Among the bases for a finding of unfitness under the statute are "[e]motional illness, mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely within a reasonable time to care for the ongoing physical, mental, and emotional needs and conditions of the child." Section 19–3–604(1)(b)(I), C.R.S. 2006; *see People in Interest of C.S.M.*, 805 P.2d 1129 (Colo.App.1990).

■ We view it as significant that the General Assembly used both "emotional illness" and "mental illness" in the text of § 19–3–604(1)(b)(I), thus suggesting they are to be given different meanings. Contrary to father's contention, the term "emotional illness" does not require a showing that he has

been diagnosed with schizophrenia, psychosis, or manic depression. It is sufficient that there was evidence he has longstanding emotional conditions that render him unable to provide for the needs of his child. *See People in Interest of S.J.C.*, 776 P.2d 1103 (Colo. 1989).

Here, the trial court found father had an emotional illness within the meaning of § 19–3–604(1)(b)(I). This finding was supported by the testimony of the therapist, who stated that, as part of her professional duties, she performed diagnoses. She explained that to diagnose a personality disorder, she would consider a person's history, pattern of behavior, and interactions.

The therapist testified that father had a personality disorder, but that she could not determine without further information whether it was an antisocial or a narcissistic personality disorder. The therapist explained that father suffered from a broad range of emotional impairments, as evidenced by his limited range of emotion and affect, his lack of parental empathy, and his projection of his feelings onto K.D. She further testified that he was unable to learn from his mistakes, change his lifestyle, or moderate his criminal behavior or substance abuse, and that he had established the pattern of behavior critical for a diagnosis of a personality disorder by having K.D. removed from his custody three times.

The therapist further testified that father did not consider or understand the impact of his behavior on K.D., nor was he able to put aside his own wants and needs to focus on K.D. According to the therapist, father was unable to stay away from drugs and criminal activity to keep the child safe.

She also testified that she had assessed father during the 2004 case, and that, although she was unable to interview him in the instant proceedings—presumably because he was incarcerated out of state—she had updated her assessment of him.

Relying on *People in Interest of S.J.C., supra,* father contends his substance abuse could not constitute a basis for finding he has an emotional illness because there is a distinction between alcohol abuse and emotional illness. However, the court in *S.J.C.* drew no distinction between a personality disorder and alcohol abuse. To the contrary, the supreme court there concluded that a parent's conduct, including his substance abuse, fell within the "core meaning" of emotional illness. *People in Interest of S.J.C., supra,* 776 P.2d at 1107. In any event, the trial court's findings here were not based solely on father's substance abuse. They were also based on his personality disorder.

We therefore conclude the record supports the trial court's finding that father had an emotional illness. Accordingly, the trial court did not err in terminating his parental rights. *See People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

## IV.

Relying on § 19–3–604(1)(b) and (c), C.R.S. 2006, father next contends the trial court erred in finding he was unfit. However, we do not address his contention under § 19–3–604(1)(c), because the court made no findings under that section. We also do not address his argument that the court erred in finding he was unfit under § 19–3–604(1)(b), because the record supports the finding that father was unfit because of an emotional illness, *see* § 19–3–604(1)(b)(I), and that no appropriate treatment plan could be devised to address his illness.

## V.

■ Father next contends the trial court erred in finding there was no less drastic alternative to termination of parental rights and concluding that termination was in K.D.'s best interests. We disagree.

Implicit in the statutory scheme for termination set forth in § 19–3–604(1), C.R.S.2006, is a requirement that the trial court consider and eliminate less drastic alternatives before entering an order of termination. *People in Interest of D.B–J.,* 89 P.3d 530 (Colo.App. 2004). In considering less drastic alternatives, the court must give primary consideration to the physical, mental, and emotional conditions and needs of the child. Section 19–3–604(3), C.R.S.2006.

Long-term or permanent placement may not be appropriate when it does not provide adequate permanence or otherwise meet the child's needs. *People in Interest of T.E.M.*, 124 P.3d 905 (Colo.App.2005).

Here, the caseworker recommended that K.D. be placed with his grandparents because he needed permanency, and his grandparents wanted to adopt him. The caseworker, the therapist, the clinical psychologist, and the CPN representative all testified that termination of parental rights and adoption were appropriate for K.D., and were in his best interests.

Thus, the evidence supports the court's findings that there were no less drastic alternatives to termination of parental rights and that terminating parental rights was in K.D.'s best interests. We may not disturb those findings on appeal. *See People in Interest of M.B.*, 70 P.3d 618 (Colo.App.2003).

Judgment affirmed.

Judge LOEB and Judge TERRY concur.