262 P.3d 895 (2010)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of C.Z., a Child, and
Concerning A.L.L. and D.Z., Respondents-Appellants.
No. 08CA2159.
Colorado Court of Appeals, Div. VI.
November 24, 2010.
*898 Joseph Fattor, County Attorney, Alison D. Casias, Special Assistant County Attorney, Dillon, Colorado, for Petitioner-Appellee.
Robert G. Tweedell, Guardian Ad Litem.
Law Office of Gina G. Bischofs, P.C., Gina G. Bischofs, Denver, Colorado, for Respondent-Appellant A.L.L.
Deborah Gans, Denver, Colorado, for Respondent-Appellant D.Z.
Opinion by Judge FURMAN.
A.L.L. (mother) and D.Z. (father) appeal from the judgment terminating the parent-child legal relationship between them and their child, C.Z. We affirm.
This opinion clarifies the appropriate appellate procedures for withdrawal and substitution of court-appointed appellate counsel in dependency and neglect proceedings after the petition on appeal is filed. See C.A.R. 3.4(j)(2). It also clarifies the burden of proof for the "active efforts" requirement under 25 U.S.C. § 1912(d) of the Indian Child Welfare Act (ICWA).

I. The Termination of Parental Rights Hearing
Following a contested hearing at which they did not appear, mother and father, the biological parents of C.Z., had their parental rights terminated. The parents have a history of alcohol abuse and violence, and they were uninvolved in much of their treatment. In addition, the mother has a history of mental instability and attempted suicide. Father had minimal contact with C.Z. throughout the case.
Because C.Z. is an Indian child, this case is governed by the ICWA. See 25 U.S.C. § 1911 ("Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child"); § 19-1-126, C.R.S.2010 (requiring compliance with the ICWA in cases filed under the Colorado Children's Code when "filing party knows or has reason to believe that the child who is the subject of the proceeding is an Indian child"). According to the ICWA, in terminating the parent-child legal relationship, the court found beyond a reasonable doubt that parental rights should be terminated and that "continued custody of the child by the parents is likely to result in serious emotional or physical damage to the child." See 25 U.S.C. § 1912(f). The court also determined that the behavior of the parents rendered them unfit, that their condition or conduct was unlikely to change within a reasonable time, and that there have been extensive active efforts by the department to provide remedial services and to prevent the breakup of the Indian family.

II. The Appeal
Shortly after the trial court entered the termination order, counsel for both parents filed notices of appeal on behalf of their clients. See C.A.R. 3.4(d) (providing that unless the appellant was pro se in the trial court, the notice of appeal "must be prepared and signed by the appellant's trial counsel").
Both counsel then sought to withdraw.
In the trial court, father's counsel filed a motion to withdraw, asserting that he "does not handle appellate matters." The trial court granted the motion, but did not appoint substitute counsel for father at that time. Mother's counsel also filed a motion to withdraw, but the trial court did not rule on that motion.
In this court, both parents' trial counsel also filed motions to withdraw, asserting that, with the possible exception of ineffective assistance of counsel, there were no viable issues on appeal and that they could not pursue ineffective assistance of counsel *899 claims against themselves. Before this court ruled on the motions to withdraw, mother's trial counsel was appointed to be a district court magistrate. Trial counsel's law partner, who was also her husband, entered an appearance as substitute counsel for mother and joined his wife's prior motion to withdraw, indicating that he would "not be briefing the only potential issue" of his wife's ineffectiveness.
Because substitute counsel had not been appointed before the petitions on appeal were due, both parents' trial counsel timely filed petitions outlining the issues on appeal. See C.A.R. 3.4(g)(1) (providing that unless the appellant is proceeding pro se, the petition shall be prepared by appellant's trial counsel, "or by substitute counsel so long as substitute counsel has filed an entry of appearance"). In the petitions on appeal, both counsel indicated that they had concluded the issues on appeal lacked merit and again requested that they be permitted to withdraw under a procedure drawn from Anders v. California, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), where a court-appointed appellate counsel had concluded that an indigent client's criminal appeal had no merit.
A motions judge for this court accepted the substitution of counsel for mother, but did not rule on his joinder in his wife's motion to withdraw. The judge granted father's counsel's motion to withdraw and appointed new counsel to represent him on appeal. The judge then struck the original petitions filed by parents' trial counsel and ordered both new counsel to file supplemental petitions addressing whether they should be permitted to file an Anders-style brief and withdraw if they, like previous counsel, concluded that their clients' appeals lacked arguable merit.
New counsel for both parents filed supplemental petitions arguing that Colorado should adopt an Anders procedure for dependency and neglect appeals. Pursuant to C.A.R. 50(b) and section 13-4-109(1), C.R.S. 2010, a division of this court requested that jurisdiction over the appeal be transferred to the supreme court for resolution of that issue. The supreme court granted the division's request. In A.L.L. v. People, 226 P.3d 1054 (Colo.2010), the court declined to adopt an Anders procedure for dependency and neglect cases. The court held that court-appointed counsel for a respondent parent in a dependency and neglect case "cannot withdraw solely because she determines the appeal to be without merit." Id. at 1063. The court further held that "an appointed appellate lawyer who reasonably concludes a parent's appeal is without merit must nonetheless file petitions on appeal" that comply with the requirements of C.A.R. 3.4(g)(3) and present any legal issues "identified and developed by the attorney, or, if she can find none, those points the parent wants argued," even if those arguments are "wholly unpersuasive." Id. at 1063-64. The court remanded the case to this court "with directions to order appellate counsel to brief their case in accordance with this opinion." Id. at 1064.
Shortly thereafter, and despite the fact that this court had not ruled on mother's second attorney's motion to withdraw, that attorney filed a notice of substitution of counsel stating that his law firm "is permitted to withdraw as counsel of record" and indicating that another attorney was replacing him as mother's appellate counsel. This court accepted the substitution of counsel and both parents' new attorneys filed amended petitions arguing that the order terminating their clients' parental rights must be vacated because the department did not comply with the ICWA. That issue is addressed in part IV of this opinion.

III. The Appellate Rules Allow for the Withdrawal and Substitution of Court-Appointed Counsel in Parental Termination Cases
In light of A.L.L., we must first address whether the motions judge on this court properly granted the motions to withdraw and substitution of counsel filed by both parents' trial counsel, and conclude that she did. Accordingly, there is no impropriety in the appeal proceeding with parents being represented by their respective substitute counsel.
*900 An indigent parent has a statutory right to court-appointed counsel at every stage of a dependency and neglect proceeding, including on appeal. §§ 19-1-105(2), 19-3-202(1), 19-3-602(2), C.R.S.2010; A.L.L., 226 P.3d at 1062-63. However, the Children's Code does not require that the same attorney represent a parent at all stages of the proceeding. Thus, the applicable statutes do not preclude the substitution of one court-appointed attorney for another, and we do not read the supreme court's opinion in A.L.L. as a blanket prohibition of the withdrawal of court-appointed counsel in dependency and neglect cases. Rather, the court's holding that counsel for a respondent parent "cannot withdraw solely because she determines the appeal to be without merit" and "on that basis alone" implicitly recognizes that withdrawal may be appropriate for other reasons or for a combination of reasons, one of which might be counsel's conclusion that the appeal lacks merit. A.L.L., 226 P.3d at 1062-63 (emphasis added).
That interpretation of A.L.L. is consistent with C.A.R. 3.4, which governs appellate procedure in dependency and neglect cases and expressly contemplates the potential for substitution of court-appointed counsel after an initial petition on appeal is filed. C.A.R. 3.4(j) provides that "[a]fter reviewing the petition on appeal, any response, and the record," the court of appeals may order supplemental briefing and "if supplemental briefing is ordered, new counsel may be substituted upon a showing of good cause." C.A.R. 3.4(j)(2).
The rule is clear that any substitution of counsel may not delay the progress of the appeal "[e]xcept for extraordinary circumstances." See C.A.R. 3.4(g)(1), (h)(1); see also C.A.R. 3.4(j)(2) (any request for substitution of counsel following entry of an order for supplemental briefing must be made "within seven days after the case is set for supplemental briefing"). However, the statutes establishing the right to court-appointed appellate counsel in dependency and neglect proceedings do not address the circumstances under which counsel may withdraw, and neither the rule nor the case law defines the scope of the "good cause" standard in C.A.R. 3.4(j)(2) for substitution of counsel after a petition on appeal has been filed.
Because dependency and neglect proceedings are civil in nature, the Colorado Rules of Civil Procedure generally apply when a particular procedure is not addressed in the Colorado Children's Code or the Rules of Juvenile Procedure. C.R.J.P. 1; People in Interest of S.M.A.M.A., 172 P.3d 958, 961 (Colo.App.2007). Thus, in People in Interest of Z.P., 167 P.3d 211 (Colo.App.2007), a division of this court concluded that C.R.C.P. 121 section 1-1(2) and the standards governing the withdrawal of counsel in civil cases also govern the withdrawal of court-appointed trial counsel during the trial phase of dependency and neglect proceedings. The division held that the "discretionary standard for withdrawal of counsel set forth in C.R.C.P. 121 section 1-1(2)(b), together with the advisements required by that rule and the Code, provide sufficient safeguards to protect a parent's interests in a dependency and neglect proceeding." Id. at 214.
However, the division in Z.P. did not have the benefit of the supreme court's decision in A.L.L. Nor did the division acknowledge the supreme court's decision in People in Interest of M.M., 726 P.2d 1108 (Colo.1986), a dependency and neglect case in which the court relied on criminal cases to justify the trial court denying counsel's motion to withdraw:
If the trial court has a reasonable basis for concluding that the lawyer-client relationship has not deteriorated to the point that counsel is unable to give effective assistance to his client, the court is justified in denying a client's request to discharge her attorney and a lawyer's request to withdraw.
Id. at 1121.
Moreover, because Z.P. involved the withdrawal of appointed counsel during the trial court phase of dependency and neglect proceedings, the division did not discuss the circumstances under which appointed appellate counsel may withdraw, and therefore did not analyze the scope of the "good cause" standard established in C.A.R. 3.4(j)(2) for the substitution of appellate counsel after supplemental briefing has been ordered.

*901 A. The Good Cause Standard in C.A.R. 3.4(j)
The supreme court and other divisions of this court have applied standards from criminal cases when analyzing the scope of court-appointed counsel's obligation to his or her client in a dependency and neglect case. In A.L.L., the supreme court recognized that while a respondent parent's right to counsel in a dependency and neglect case is established by statute, not constitutional mandate, once counsel has been appointed in a termination proceeding, constitutional principles developed in criminal cases define the scope of counsel's obligation to the client. A.L.L., 226 P.3d at 1062-63. Likewise, the standard for determining whether an appointed attorney in a dependency and neglect case provided ineffective assistance is the same as the standard for evaluating appointed counsel's effectiveness in criminal cases. People in Interest of A.J., 143 P.3d 1143, 1148 (Colo.App.2006); see also M.M., 726 P.2d at 1121.
Analogizing the role of appointed counsel in dependency and neglect cases to that of appointed counsel in criminal cases makes sense because, unlike most civil cases, dependency and neglect cases affect fundamental liberty interests. See C.S. v. People, 83 P.3d 627, 635 (Colo.2004); A.J., 143 P.3d at 1146; People in Interest of A.J.H., 134 P.3d 528, 531 (Colo.App.2006). Moreover, while the decision whether to permit the withdrawal or substitution of counsel is discretionary in dependency and neglect cases, see Z.P., 167 P.3d at 214, C.A.R. 3.4(j)(2) limits the scope of that discretion by limiting substitution of counsel in dependency and neglect appeals after the petition on appeal has been filed to cases in which there is good cause justifying the change in counsel. C.A.R. 3.4(j)(2). C.R.C.P. 121 section 1-1(2)(b) contains no such limitation on the court's discretion in civil cases.
Because substitute counsel was appointed for both parents after trial counsel filed the initial petitions on appeal, we do not address the scope of the "extraordinary circumstances" standard under C.A.R. 3.4(g)(1) and (h)(1).
Accordingly, we decline to apply Z.P. withdrawal standards to the good cause standard under C.A.R. 3.4(j)(2) for substitution of court-appointed appellate counsel after the petition on appeal has been filed, and we conclude the good cause standard is the same standard recognized in criminal cases, not the standard for civil cases set forth in C.R.C.P. 121 section 1-1(2)(b). See In re Estate of Becker, 32 P.3d 557, 563 (Colo.App. 2000) (one panel of the court of appeals is not obligated to follow precedent established by another).

B. Standard of Review
The criminal cases regarding the withdrawal of appointed counsel address circumstances under which substitute counsel may be appointed, as well as those under which a court may allow counsel to withdraw and either require the defendant to proceed without counsel or permit him to do so following a valid waiver of the right to counsel. See, e.g., People v. Arguello, 772 P.2d 87, 94 (Colo. 1989); People v. Garcia, 64 P.3d 857, 863 (Colo.App.2002); People v. Mossmann, 17 P.3d 165, 170 (Colo.App.2000); People v. Smith, 881 P.2d 385, 388 (Colo.App.1994). Because both parents here are represented by substitute counsel, we address only the circumstances under which substitution of counsel may be warranted under C.A.R. 3.4(j) after the petition on appeal is filed, and do not consider whether and under what circumstances an indigent respondent parent can either be permitted or required to proceed pro se.
Before a substitution of counsel is warranted based on a criminal defendant's dissatisfaction with his court-appointed attorney, the court must determine that there is "`some well founded reason for believing that the appointed attorney cannot or will not [competently] represent'" the defendant. People v. Bergerud, 223 P.3d 686, 694 (Colo.2010)(quoting Arguello, 772 P.2d at 94); see also People v. Kelling, 151 P.3d 650, 653 (Colo.App.2006). In such cases, substitute counsel may be appointed only if there is "good cause" for doing so, "such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict" that *902 may lead to an unjust verdict. Arguello, 772 P.2d at 94 (quoting McKee v. Harris, 649 F.2d 927, 931 (2d Cir.1981)); accord Kelling, 151 P.3d at 653; Garcia, 64 P.3d at 863. An attorney's disagreement with the client regarding the strength of the case does not constitute an actual conflict of interest requiring the appointment of substitute counsel. See People v. Hodges, 134 P.3d 419, 425 (Colo.App.2005), aff'd on other grounds, 158 P.3d 922 (Colo.2007); People v. Apodaca, 998 P.2d 25, 28 (Colo.App.1999); cf. A.L.L., 226 P.3d at 1063 (court-appointed counsel in a dependency and neglect case "cannot withdraw solely because she determines the appeal to be without merit"). This standard applies whether it is the client or the attorney who requests the appointment of substitute counsel. See Hodges, 134 P.3d at 425-26; see also People v. Collie, 995 P.2d 765, 770 (Colo.App.1999).
The decision whether to grant an appointed attorney's motion to withdraw and for appointment of substitute counsel is a matter within the court's discretion. People v. Schultheis, 638 P.2d 8, 15 (Colo.1981); People v. Gonyea, 195 P.3d 1171, 1172 (Colo. App.2008); Hodges, 134 P.3d at 425. In exercising that discretion, the court "should consider the need for orderly and expeditious administration of justice and should balance that need against the particular facts underlying the motion." M.M., 726 P.2d at 1121. In doing so, the court should consider the timing of the motion, whether granting it will delay the proceedings, and the possibility that any new counsel will be confronted with similar difficulties. People v. Rubanowitz, 688 P.2d 231, 243 (Colo.1984); Schultheis, 638 P.2d at 15; Hodges, 134 P.3d at 425; see also C.A.R. 3.4(g)(1), (h)(1), (j) (substitutions of counsel may not delay the progress of dependency and neglect appeals).

C. Substitution of Both Parents' Counsel in this Case Was Appropriate
Applying the criminal standard here, we conclude there was good cause for the substitution of both parents' counsel when the motions judge ordered supplemental briefing on the Anders issue, and the substitution of mother's counsel after A.L.L. was announced.
As noted, consistent with the requirement of C.A.R. 3.4(d), both parents' trial counsel filed notices of appeal following entry of the termination order. They filed their motions to withdraw before, simultaneously with, and within days after they filed the notices of appeal and, despite having concluded that the appeals lacked arguable merit and moving to withdraw on that basis, they complied with C.A.R. 3.4(g)(1) by filing timely petitions outlining their clients' arguments on appeal.
Because counsel complied with all filing deadlines despite the pendency of their motions to withdraw, there is no basis for concluding the motions were filed in an effort to delay the appeal. Indeed, the delay in the appeal related to the motions to withdraw was the result of this court's request that the case be transferred to the supreme court for resolution of the Anders issue, not by the mere filing of the motions to withdraw.

1. Pre-A.L.L. Substitution of Both Parents' Counsel
There is no question that mother's trial counsel's appointment as a district court magistrate and her decision to leave private practice constituted good cause for permitting her to withdraw and for the court's accepting her husband-law partner's entry of appearance as substitute counsel. See Colo. Const. art. VI, § 18; C.R.M. 5(g) (magistrates must "conduct themselves in accord with the provisions of the Colorado Code of Judicial Conduct"); C.J.C. 3.10 ("A judge shall not practice law except as permitted by law or this Code."). Moreover, under the circumstances presented here, we also conclude the motions judge acted within her discretion in appointing substitute counsel for father in the order for supplemental briefing on the Anders issue.
Until A.L.L. was announced, no Colorado dependency and neglect case addressed whether a court-appointed attorney may withdraw based on his or her conclusion that the client's appeal is meritless. Laura Grzetic Eibsen & Toni J. Gray, Dependency and Neglect Appeals Under C.A.R. 3.4, 36 Colo. Law. 55, 57 n. 20 (Oct. 2007). Thus, when the motions judge ordered supplemental *903 briefing on the Anders issue, the law did not prohibit the substitution of counsel on that basis.
Because C.A.R. 3.4 is modeled after the rule governing dependency and neglect appeals in Utah, another division of this court turned to cases interpreting Utah's rule for guidance in interpreting the extension provisions in C.A.R. 3.4. See A.J.H., 134 P.3d at 531. Thus, it was reasonable for the motions judge in this case to appoint substitute counsel for father in light of cases interpreting Utah's corollary to C.A.R. 3.4 as permitting a court-appointed attorney who concludes there are no viable issues on appeal (other than an ineffective assistance of trial counsel claim) to withdraw and file an Anders-style brief. See In re B.A.P., 148 P.3d 934, 938 (Utah 2006); see also In re J.E., 122 P.3d 679, 681-84 (Utah Ct.App.2005); In re D.C., 963 P.2d 761, 764 (Utah Ct.App.1998).
Accordingly, based on the law in effect at the time, the motions judge acted within her discretion in implicitly concluding that counsel's determination that father's appeal lacks merit constituted good cause for substitution of counsel under C.A.R. 3.4(j)(2) based on an irreconcilable conflict of interest. In light of the decision in A.L.L., it would no longer be appropriate to appoint substitute counsel based solely on trial counsel's conclusion that the appeal lacks arguable merit. Thus, our conclusion here is limited to the facts of this case.

2. Post-A.L.L. Substitution of Mother's Counsel
When mother's second appellate counsel entered an appearance after his wife was appointed to be a district court magistrate, he indicated he was "stepping into the shoes of [trial counsel] for all pending matters before this court," but that "because of [their] relationship ... as both [law] partner[s] and [spouses]," he was "not taking the position of independent counsel," and would "not be briefing the only potential issue of ineffective assistance of counsel." As noted above, the motions judge accepted substitute counsel's entry of appearance, but did not rule on the pending motion to withdraw based on counsel's conclusion that, other than ineffective assistance of trial counsel, there were no viable issues for appeal.
In accordance with the judge's order, substitute counsel filed a supplemental petition on appeal indicating that he, like trial counsel, had concluded the appeal lacked arguable merit, and arguing that the court should permit him to withdraw and file an Anders-style brief. Then, after the supreme court issued its opinion in A.L.L., counsel filed a notice of substitution of counsel in which a third attorney entered an appearance for mother. This court accepted the substitution of counsel by accepting new counsel's petition arguing the merits of mother's ICWA claim.
Because neither this court nor the supreme court had granted second counsel's motion to withdraw, his representation in the notice of substitution of counsel that his law firm "is permitted to withdraw" was inconsistent with the requirements of C.A.R. 3.4(j)(2). Nevertheless, under the limited circumstances presented here, we find no impropriety in the court's acceptance of the substitution of counsel.
Because second counsel was not trial counsel, the efficiencies that would have been achieved by trial counsel's continued representation of her client on appeal would not have been served by his involvement in the appeal. Moreover, the entry of substitute counsel did not delay the progress of the appealin fact, substitute counsel requested that this court enter a briefing schedule so that the appeal could proceed expeditiously. We recognize that permitting counsel to withdraw based solely on his conclusion that the appeal lacks arguable merit would be inappropriate. See A.L.L., 226 P.3d at 1063. However, weighing all the factors, including counsel's view of the case and the unusual circumstance that he is married to trial counsel, and balancing those factors against the need for expeditious handling of dependency and neglect cases, we conclude there was good cause for permitting another substitution of counsel under the limited circumstances presented here.
We now turn to parents' substantive arguments.

*904 IV. The Department Complied with the ICWA
Both parents claim the order terminating their parental rights must be vacated because the department did not comply with the notice and active efforts requirements of the ICWA. We disagree.

A. Notice to Father's Tribe
Father claims "there is no indication in the record" that the department provided his tribe with "any notice" of the termination proceedings. The record does not support this claim.
Under 25 U.S.C. § 1912(a) (2001) and section 19-1-126(1)(a)-(b), C.R.S.2010, if the state knows, or has reason to know or believe, that an Indian child is involved in a dependency and neglect action, it must provide notice to the Indian child's tribe, or to the Bureau of Indian Affairs (BIA) if the tribe cannot be identified or located, by registered mail, with return receipt requested, of the pending proceedings and of the tribe's right to intervene. B.H. v. People in Interest of X.H., 138 P.3d 299, 302 (Colo.2006); People in Interest of N.D.C., 210 P.3d 494, 496-97 (Colo.App.2009); People in Interest of S.R.M., 153 P.3d 438, 442 (Colo.App.2006). Notice must be received at least ten days before the hearing in involuntary proceedings in which a party seeks to place a child in foster care or to terminate parental rights. See People in Interest of J.O., 170 P.3d 840, 842 (Colo.App.2007).
Whether the notice requirement of the ICWA was satisfied is a question of law, which this court reviews de novo. People in Interest of T.M.W., 208 P.3d 272, 274 (Colo. App.2009).
Father told the department he might have a connection to the Blackfeet Tribe. Accordingly, when the department filed the motion to terminate parental rights, it notified the Blackfeet Reservation and BIA that it had done so. The notice was sent via registered mail and the receipt confirming delivery indicated that the Reservation received the notice on July 14, 2008four days after the motion was filed and almost two months before the termination hearing. The Tribe did not intervene or otherwise participate in the proceedings and, in a letter dated September 21, 2008, notified the court that the child was not eligible for membership in the Tribe.
Accordingly, the record establishes the department complied with the notice requirement of the ICWA with respect to father's tribe. See J.O., 170 P.3d at 842 (department complied with the notice requirements under the ICWA by notifying the identified tribes).

B. The Active Efforts Requirement
Both parents contend the trial court erred in finding the department made "active efforts" to provide the remedial and rehabilitative services they needed to prevent the breakup of the family. Again, we disagree.
The ICWA "active efforts" requirement applies to termination proceedings:
Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
25 U.S.C. § 1912(d).
To terminate parental rights of an Indian child, the ICWA requires that the state prove beyond a reasonable doubt "that the continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f); People in Interest of N.B., 199 P.3d 16, 18, 26 (Colo.App.2007). However, neither 25 U.S.C. § 1912(d) nor case law interpreting it requires that the court apply the beyond a reasonable doubt burden of proof when deciding whether the state made active efforts to prevent the breakup of the family. See N.D.C., 210 P.3d at 499 (noting that "[t]he minimum federal standards for removing Indian children from their homes require ... the court to make certain findings beyond a reasonable doubt" and, without specifying the applicable burden of proof, noting the additional requirement that the *905 court find that the department made "active efforts to avoid the child's removal from parental custody"). Thus, we apply the same clear and convincing evidence standard to the active efforts requirement that we apply to the reasonable efforts requirement in non-ICWA cases. See In re C.A.V., 787 N.W.2d 96, 100-01 (Iowa Ct.App.2010) (applying clear and convincing evidence standard to the ICWA active efforts requirement; collecting cases applying both the clear and convincing evidence and beyond a reasonable doubt standards); see also Santosky v. Kramer, 455 U.S. 745, 755-57, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (each state may determine which standard of proof to apply in termination of parental rights cases, but to satisfy the minimum requirements of procedural due process, a state must establish that the state's criteria for terminating parental rights, including the requirement under New York statute that it make "diligent efforts" to "encourage and strengthen the parental relationship," have been established based on at least clear and convincing evidence); People in Interest of A.M.D., 648 P.2d 625, 631 (Colo.1982) (adopting clear and convincing evidence standard in termination of parental rights cases); A.J.H., 134 P.3d at 534-35 (record supported trial court's determination based on clear and convincing evidence that the state made reasonable efforts to rehabilitate the parent and reunite the family).
While the department is required to make active efforts to rehabilitate an Indian child's parents and prevent the breakup of the family, it need not "persist with futile efforts" by continuing to provide services to a parent who has already received services that were unsuccessful in rehabilitating the parent and reuniting the family. People in Interest of K.D., 155 P.3d 634, 637 (Colo.App. 2007) (quoting People in Interest of J.S.B., 691 N.W.2d 611, 621 (S.D.2005)); see also N.B., 199 P.3d at 25. Thus, the department may deny additional services "if it is clear that past efforts have met with no success." K.D., 155 P.3d at 637 (quoting In re Adoption of Hannah S., 142 Cal.App.4th 988, 48 Cal.Rptr.3d 605, 612 (2006)).
Whether the department made adequate active efforts is a mixed question of fact and law. We review the trial court's factual findings for an abuse of discretion, and the legal issues de novo. See Neal M. v. State, 214 P.3d 284, 290 (Alaska 2009).

1. Active Efforts to Rehabilitate Father
Father claims the trial court erred in finding that the department made active efforts to rehabilitate him and prevent the breakup of the family because it neither provided him with substance abuse treatment nor facilitated visitation with the child after he moved from Leadville to Denver for what he claimed were medical reasons. We are not persuaded.
Based on the evidence and the opinion of the child welfare and ICWA expert witness that the department "most certainly" made active efforts to rehabilitate both parents and prevent the breakup of the family, the court concluded that the department made "extensive active efforts" and therefore complied with the ICWA.
The record supports the trial court's findings because the most critical components of father's treatment plan required him to participate in mental health therapy, have a substance abuse evaluation and follow all treatment recommendations, submit to random urinalysis (UA) testing, take parenting classes, and have regular visitation with the child. Although he had a mental health assessment, he refused to participate in therapy because he did not believe he needed it. Moreover, he did not have a substance abuse evaluation, did not submit random UAs, did not attend parenting classes, and had only two visits with the child, which the caseworker testified did not go well. And although the department made referrals to treatment providers and provided the other services father needed to comply with his plan when he lived in Leadville, he did not take advantage of those services.
Accordingly, we conclude the department complied with the ICWA, despite its failure to provide additional services after father moved to Denver. See K.D., 155 P.3d at 637.

*906 2. Active Efforts to Rehabilitate Mother
In support of her claim that the department did not make active efforts to rehabilitate her and prevent the breakup of the family, mother relies on the fact that her treatment plan only required the department to make "reasonable efforts" to rehabilitate her and was not modified to require the department to comply with the ICWA "active efforts" standard. She also points to the fact that between May 1, 2007, and February 5, 2008, the court found only that the department had made "reasonable efforts" to assist her in complying with her treatment plan. She acknowledges, however, that in the orders entered after her Tribe intervened, including the order terminating parental rights, the court found that the department had made "active efforts" as required by the ICWA.
Another division of this court has held that "`[a]ctive efforts' are equivalent to reasonable efforts to provide or offer a treatment plan in a non-ICWA case." K.D., 155 P.3d at 637. However, mother argues that the ICWA's "active efforts" standard requires more than the "reasonable efforts" standard applicable in non-ICWA cases. See Dashiell R. v. State, 222 P.3d 841, 849 (Alaska 2009) ("As opposed to passive efforts such as simply developing a plan for the parent to follow, active efforts require that the state actually help the parent develop the skills required to keep custody of the children."); In re Interest of Walter W., 274 Neb. 859, 744 N.W.2d 55, 61 (2008) (active efforts standard requires more than reasonable efforts standard applicable in non-ICWA cases, and at least some of the efforts should be culturally relevant).
The critical components of mother's treatment plan were similar to those in father's plan, and the department provided her with similar services. As mother acknowledges in her petition on appeal, the department gave her referrals to mental health and substance abuse treatment providers and paid for her treatment; provided parenting classes; offered to help her apply for food stamps, housing, and other public assistance programs; and provided her with transportation to and from various appointments and her visits with the child.
We agree with the trial court that these efforts more than satisfied the "active efforts" requirement of the ICWA, and we reject mother's contention that the use of the term "reasonable efforts" in the treatment plan and the court's earlier orders undermines the validity of its active efforts finding in the termination order. In light of that conclusion, we need not revisit the question whether the active efforts standard is more demanding than the reasonable efforts standard. See In re Nicole B., 410 Md. 33, 976 A.2d 1039, 1058 (2009) ("we should examine the substance of the Department's ... actions; we should not decide the case based upon the use, or failure to use, the statutory label `active efforts'").
The judgment is affirmed.
Judge CARPARELLI and Judge CONNELLY concur.