[No. C048581. Third Dist. Sept. 8, 2006.]

Adoption of HANNAH S., a Minor.
KRISTINA S., Plaintiff and Appellant, v.
WALTER S., Defendant and Respondent.

## COUNSEL

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, C. Athena Roussos; and Jon D. Lydell for Plaintiff and Appellant.

Walter S., in pro. per., for Defendant and Respondent.

No appearance for Minor.

## OPINION

**DAVIS, J.**—Kristina S., mother of the minor, appeals from the orders of the superior court denying her petition to terminate the parental rights of Walter S. (father) and free the minor for adoption by the stepfather. (Fam. Code, § 7820 et seq.) Appellant contends that this court should apply the existing Indian family doctrine to permit her to avoid the substantive requirements of the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.) Appellant further contends that the "good cause" exception in ICWA should apply to permit termination of the father's parental rights. We requested supplemental briefing on several questions relating to application of the provisions of ICWA. After consideration of those issues, we conclude reversal is required.

### FACTS

In August 2003, appellant filed an application to terminate the father's parental rights in conjunction with the stepfather's petition to adopt the minor. The petition to adopt the minor stated that the minor had no Indian ancestry. The father was in custody.

In October 2003, the Confederated Tribes of the Grand Ronde Community of Oregon (CTGR) moved to intervene because the minor was an enrolled member of the federally recognized tribe. The court granted the motion.

According to the probation report on stepparent adoption, appellant had custody of the minor and the father had failed to provide for the minor for over four years. The father did not consent to the adoption. The report recommended terminating the father's parental rights and granting the petition for adoption. A subsequent investigation report stated that appellant was involved with the father when appellant was 16 and the father was in his 30's. According to appellant, the father was abusive and controlling and she left him, when the minor was born, to live with the maternal grandmother. The relationship continued over the next year and a half until the father was arrested in December 1999 and eventually convicted of violent crimes against appellant, including kidnapping and terrorist threats. The father is currently serving a 27-year prison term as a result of these convictions. Appellant had some contact with the paternal aunt in 2000 and the paternal grandmother in 2002. The investigation report stated the father had had minimal contact with the minor and had provided no support for her. The report concluded that termination of the father's parental rights was in the minor's best interests.

Appellant filed an amended petition in March 2004, alleging that the father had abandoned the minor and had been convicted of a felony demonstrating his unfitness to have custody.

CTGR filed a pretrial statement which indicated that the father had applied for tribal membership for the minor in November 1999 and that the minor was enrolled in April 2000. The tribe had an interest in preserving the minor's heritage but did not object to termination of the father's parental rights if appellant provided assurances that she would maintain the minor's cultural connection to the tribe. In October 2004, CTGR and appellant stipulated to these facts.

The father moved to dismiss on the ground that appellant had failed to show compliance with the substantive provisions of ICWA. Specifically, the father argued, appellant had not shown active efforts had been made to prevent the breakup of the Indian family or that evidence beyond a reasonable doubt, including testimony of a qualified expert witness, supported a determination that the continued custody of the child by the father was likely to result in serious emotional or physical damage to the child. (25 U.S.C. § 1912(d), (f).)

Appellant opposed the motion, contending that the existing Indian family doctrine constituted an exception to the application of the substantive provisions of ICWA and that the doctrine should apply in this case. Alternatively,

appellant argued that the requirements of ICWA had been met since there was no family to preserve and appellant could do little in any case to rehabilitate the father, who was in state prison. Further, therapist Sharon Sloper, an Indian expert, had stated that introducing the minor to the father would be damaging to her except under the most controlled conditions.

At trial, Sloper testified as an expert within the meaning of ICWA. Based upon her interview with the six-year-old minor, she stated that the minor had no recollection of the time when the father was involved in her life and viewed her stepfather as her father. Sloper observed the minor interact in a positive way with the stepfather. Sloper believed that under the right circumstances, e.g., in counseling, it would be appropriate and important for the minor to learn her biological father's identity. Sloper opined it was in the minor's best interests to be adopted by her stepfather. It was her belief that for the father to form a bond with the minor it would be necessary to have consistency and stability in the relationship. However, informing the minor of the existence of her biological father, followed by frequent and consistent contact with him at this age, would be confusing for the minor and could cause emotional harm depending on the minor's reaction. The expert saw no way the necessary consistent parental contact to develop a bond could occur while the father was incarcerated, and sporadic contact would be confusing for the minor. Further, the expert opined that visiting a parent in prison might be good to maintain a relationship, but not to establish one. Even if contact with the father was being initiated carefully, he would not be functioning as a father and the expert still believed that termination of parental rights was in the minor's best interests.

Appellant testified about her relationship with the father prior to and following the minor's birth. Appellant stated she separated from the father just before the minor was born, after they were served with an eviction notice due to the father's violent behavior. She testified she received no support from the father after his arrest and had no contact with him thereafter except for a letter sent from prison through his relatives, which she returned. Appellant testified that the minor does not know the father is her biological father and thinks that appellant's husband is her father. After the minor was born, appellant did travel to Oregon to visit the father there for about a week while he was addressing his drinking problem. The minor did have contact with the father before he was incarcerated and he provided some care for the minor from time to time but was often under the influence when he visited. Appellant testified she had made no attempt to contact the father and had not worked with the tribe or any other entity to assist him in communicating with the minor. She was opposed to the father having contact with the minor by mail or e-mail. Appellant believed the father was violent based on his actions toward her, and that he was a danger to the minor. She had not hired a

therapist to help the minor deal with the fact that the man the minor believes is her father is not her biological father.

The father testified he had been in an alcohol rehabilitation plan through the tribe in Oregon and appellant had visited him there. He had seen the minor frequently after her birth and felt the minor was bonded to him. He testified he relapsed twice in 1999 and appellant made it clear their relationship was over. She was tired of dealing with his drinking and did not want him around. He agreed he had a drinking problem and had prior felony convictions in 1984 for rape and oral copulation, and his own family had restraining orders against him in 1996 and 1999. Following his convictions of the offenses against appellant, a lifetime domestic violence restraining order was issued prohibiting him from contacting appellant.

The court issued its statement of decision in which it rejected the existing Indian family doctrine, following the prior decision of this court. The court found proof beyond a reasonable doubt was lacking to establish that appellant made active efforts to provide remedial and rehabilitative services, or that expert testimony was presented supporting finding beyond a reasonable doubt that continued custody of the child by the father was likely to result in serious emotional or physical damage. The court reviewed the evidence, and found that appellant's testimony was evasive at times and lacking in candor, and that appellant actively prevented communication between the minor and the father. The court concluded appellant's expert had not shown beyond a reasonable doubt that continued custody of the type sought by the father, i.e., contact by mail or e-mail, or even eventual visitation in prison if properly prepared, was likely to result in serious emotional or physical damage to the minor. The court denied the request to terminate the father's parental rights.

## DISCUSSION

### I

Appellant, noting this court has previously rejected the idea that there should be judicially created exceptions to the provisions of ICWA, nonetheless invites us to adopt the existing Indian family doctrine. We decline to do so.

ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, child custody proceedings which terminate parental rights. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.) ICWA contains provisions for notice to the tribes and specifies certain

findings that must be made prior to termination of parental rights when an Indian child is involved. (25 U.S.C. § 1912.)

Not long after enactment of ICWA, the Kansas Supreme Court found the purpose of ICWA was to preserve existing Indian families and to set standards for removal of children from an existing Indian environment. (*In re Adoption of Baby Boy L.* (1982) 231 Kan. 199 [643 P.2d 168, 175] (*Baby Boy L.*).) The Kansas court held that ICWA did not apply to an Indian child in adoption proceedings involving a non-Indian mother where the child had never been a member of an Indian home or culture. (*Ibid.*) Over the years, this judicially created exception has become known as the "existing Indian family doctrine." The doctrine has been adopted by some states and rejected in others. (*Crystal R. v. Superior Court* (1997) 59 Cal.App.4th 703, 714–715 [69 Cal.Rptr.2d 414] (*Crystal R.*).)

In California, there is a split in the appellate districts and the viability of the doctrine is not settled. The Sixth Appellate District (*Crystal R., supra,* 59 Cal.App.4th at pp. 718–724) and divisions of the Second (*In re Bridget R.* (1996) 41 Cal.App.4th 1483 [49 Cal.Rptr.2d 507] (Div. Three) and *In re Santos Y.* (2001) 92 Cal.App.4th 1274 [112 Cal.Rptr.2d 692] (Div. Two)) and Fourth (*In re Alexandria Y.* (1996) 45 Cal.App.4th 1483 [53 Cal.Rptr.2d 679] (Div. Three)) Appellate Districts have adopted the doctrine. The Fifth Appellate District (*In re Alicia S.* (1998) 65 Cal.App.4th 79 [76 Cal.Rptr.2d 121] (*Alicia S.*)) and the First Appellate District (*Adoption of Lindsay C.* (1991) 229 Cal.App.3d 404 [280 Cal.Rptr. 194] (Div. Three)) have rejected the doctrine.

■ Several years ago, this court addressed the question of whether ICWA applied to a petition by a non-Indian mother to terminate the parental rights of an Indian father to an Indian child. (*In re Crystal K.* (1990) 226 Cal.App.3d 655 [276 Cal.Rptr. 619] (*Crystal K.*).) We noted that Congress had specified only two exclusions to ICWA, i.e., custody disputes resulting from divorce proceedings between the parents of an Indian child; and placements of Indian children as a result of juvenile delinquency proceedings. (226 Cal.App.3d at p. 662.) In finding that ICWA applied to the termination of parental rights proceeding being appealed, we stated: "Congress delineated the only exclusions and judicially created exclusions cannot be added." (226 Cal.App.3d at p. 663.)

In *Crystal K.*, the exception the trial court tried to apply, and which was rejected by this court, was that ICWA did not apply to intrafamily custody disputes. (*Crystal K., supra,* 226 Cal.App.3d at p. 664.) While factually distinguishing cases such as *Baby Boy L.* (*ibid.*), this court did endorse the broader view of the scope of ICWA set forth in *Matter of Appeal in Pima County, Etc.* (1981) 130 Ariz. 202 [635 P.2d 187, 188], i.e., that the

fundamental assumption of ICWA is that it is in the Indian child's best interest to protect the child's relationship with the tribe. (*Crystal K., supra,* 226 Cal.App.3d at p. 665.)

The existing Indian family doctrine, although related to the judicially created exception advocated in *Crystal K.,* is not precisely the same. Nonetheless, our analysis is unchanged. The only exceptions to application of ICWA's provisions have been specified by Congress; judicial creation of additional exceptions of any kind are not permitted. After careful review of the cases decided since our opinion in *Crystal K.,* we continue to agree with those courts that have decided the existing Indian family doctrine has no place in the application of ICWA. (*Alicia S., supra,* 65 Cal.App.4th 79; *Adoption of Lindsay C., supra,* 229 Cal.App.3d 404; see also *State in Interest of D.A.C.* (Utah 1999) 933 P.2d 993.)

■ To the extent some of the decisions adopting the existing Indian family doctrine rest upon a constitutional analysis of equal protection or substantive due process requiring a compelling interest standard, we agree with the analysis in *In re A.B.* (2003) 2003 N.D. 98 [663 N.W.2d 625, 636], which states: "The United States Supreme Court has consistently rejected claims that laws that treat Indians as a distinct class violate equal protection. [Citations.] The different treatment of Indians and non-Indians under ICWA is based on the political status of the parents and children and the quasi-sovereign nature of the tribe. [Citations.] We apply the rational basis test to [the] County's substantive due process and equal protection challenges, and we conclude ICWA is rationally related to the protection of the integrity of American Indian families and tribes and is rationally related to the fulfillment of Congress's unique guardianship obligation toward Indians."

## II

Appellant also urges this court to apply the "good cause" exception of 25 United States Code section 1915(b) to avoid the substantive evidentiary requirements of ICWA.

■ Section 1915 of title 25, United States Code, part of ICWA governs placement of Indian children. Specifically, 25 United States Code section 1915(a) provides: "In any adoptive placement of an Indian child under State law, preference shall be given, *in the absence of good cause to the contrary,* to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families." (Italics added.) Section 1915(b) provides for similar preferences when an Indian child is to be placed in foster care or a preadoptive placement.

It is apparent that the provisions of the statute apply only to the actual placement decision when an Indian child is placed for adoption or foster care outside the home of one of the biological parents. The obvious reason for this is to protect "the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society." (*Fresno County Dept. of Children & Family Services v. Superior Court* (2004) 122 Cal.App.4th 626, 641 [19 Cal.Rptr.3d 155]; accord, *Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 36–37 [104 L.Ed.2d 29, 109 S.Ct. 1597].)

In this case, if the court granted the termination of the father's parental rights and the stepfather's proposed adoption, the child would be living with her biological mother. Accordingly, not only can the good cause exception not be used to avoid the other substantive provisions of ICWA, it does not even apply to the placement here.

## III

After consideration of the initial briefing in the case, this court requested supplemental briefing on several questions related to the application of the provisions of ICWA in the circumstances of this case. We shall now turn to a discussion of these additional issues:

1) Did the trial court apply the proper standard of proof in determining whether active efforts to provide services designed to prevent the breakup of an Indian family had been made within the meaning of title 25 United States Code section 1912(d) and *In re Michael G.* (1998) 63 Cal.App.4th 700, 710–711 [74 Cal.Rptr.2d 642] (*Michael G.*)?

In its ruling, the court found "that evidence beyond a reasonable doubt is lacking to prove" appellant made active efforts to prevent the breakup of the Indian family.

■ Title 25 United States Code section 1912(d) simply states that the party seeking to terminate parental rights "shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." California Rules of Court, rule 1439(i)(4) is to the same effect. Reasonable doubt is not the standard to assess active efforts. (*Michael G., supra*, 63 Cal.App.4th at pp. 710–711.) The proper standard is clear and convincing. (*Id.* at p. 712.) The court did not apply the proper standard when assessing whether appellant had complied with the requirement of ICWA to show active efforts.

2) What constitutes such active efforts under the circumstances of this case?

Active efforts are essentially equivalent to reasonable efforts to provide or offer reunification services in a non-ICWA case and must likewise be tailored to the circumstances of the case. (*In re Michael G., supra,* 63 Cal.App.4th at pp. 713–714.) Moreover, it has been held that denial of services in an agency removal case is not inconsistent with the active efforts requirement if it is clear that past efforts have met with no success. (*Letitia V. v. Superior Court* (2000) 81 Cal.App.4th 1009, 1016 [97 Cal.Rptr.2d 303].) There is no reason an individual should be held to a higher standard than an agency which has superior resources. In *Crystal K.,* this court explained that active efforts "must be directed at remedying the basis for the parental termination proceeding," in this case, the allegations of abandonment and felony convictions resulting in a prison term. (*Crystal K., supra,* 226 Cal.App.3d at p. 667.) We further explained that the federal guidelines define " 'breakup of the Indian family' " as circumstances in which the Indian parent is "unable or unwilling to raise the child in a healthy manner emotionally or physically." (*Crystal K., supra,* at p. 667; see also 44 Fed.Reg. 67592 (Nov. 26, 1979) Guideline D.2., Commentary.) Active efforts are intended to "attempt to preserve the parent-child relationship." (*Matter of Appeal in Pima County, Etc., supra,* 635 P.2d at p. 193.)

In this case, after the minor was born and the parents separated due to the father's violence, appellant continued to have contact with the father and visited him in Oregon when he was in a tribal treatment program. It was not until he relapsed twice and committed serious crimes against her that she gave up on him. The father's subsequent violent acts toward appellant and resulting incarceration demonstrated his inability to provide an emotionally and physically healthy parent-child relationship with the minor. Appellant has neither the ability nor the resources to provide him culturally appropriate services now that he is in state prison, nor is she required by ICWA to place herself or the minor at risk of physical or emotional harm by having direct contact with him. It is true that, after the father was incarcerated, appellant allowed the minor to believe another man was her father and prevented ongoing contact with her biological father; but appellant did not prevent the father from building on his relationship with the minor until his alcoholism and violent tendencies toward her became too much for her to deal with, and appellant has more recently begun to foster a relationship between the minor and the tribe. Appellant cannot be expected to be responsible for further attempts to alleviate the father's alcohol abuse and violence or to foster a parent-child relationship between the minor and the father when the father, despite appellant's prior support and understanding, perpetrated a vicious attack upon her which resulted in his incarceration and a lifetime restraining order.

Appellant argues that the facts here demonstrate why ICWA should not apply in this case. Appellant misunderstands the state of the law. The minor is an Indian child and an enrolled member of her tribe. ICWA applies. The issue here, as in all such cases, is what efforts, under the facts of the case, must be made to comply with the substantive provisions of ICWA.

3) It appears from the statement of decision that the trial court relied solely upon expert testimony, rather than all the evidence before the court. If so, did the court properly assess the evidence within the meaning of title 25 United States Code section 1912(f) and the federal guidelines (44 Fed.Reg. 67593 (Nov. 26, 1979))?

■ "No termination of parental rights may be ordered . . . in the absence of a determination, supported by evidence beyond a reasonable doubt, *including testimony of qualified expert witnesses*, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." (25 U.S.C. § 1912(f).) It is clear from the words of the statute that the expert's testimony is only a part of the evidence supporting the determination. According to the federal guidelines, Congress was primarily concerned with avoiding cultural bias in termination of parental rights of Indian children. (44 Fed.Reg. 67593, *supra,* Guideline D.3., Commentary.) The evidence of the expert is to assist the court in determining the risk of damage to the child and may be useful in placing the behavioral patterns of the parents in a cultural context if necessary. (44 Fed.Reg. 67593, *supra,* Guideline D.4., Commentary.)

In the statement of decision, the court appears to rely *solely* on the expert's testimony, rather than on all the evidence before it. This evidence includes appellant's and the father's family's concern for the father's extensive history of violence; the restraining order; the child's current stability; the father's testimony, discounting his own responsibility for the crimes for which he is in prison and for an earlier assault on appellant, and demonstrating his manipulative nature; the tribe's rather unusual agreement not to oppose termination of parental rights; appellant's efforts to maintain the minor's cultural connection to her tribe; *and* the expert's testimony about the effect on the minor of introducing her to the father and maintaining a parent-child relationship with him. According to the expert, even if the introduction could be done over a period of time and could permit ongoing contact without severe trauma, the contact would have to be closely monitored and the father would not be able to either act as a parent or develop a parental bond with the minor.

Additionally, the expert testified that visiting an incarcerated parent with whom the child had no prior bond could be harmful to the child.[1]

■ Because the court failed to apply the proper standard in determining whether active efforts had been made and did not consider all the evidence when determining whether continued custody would damage the minor, reversal is required.

## DISPOSITION

The orders of the court are reversed. Appellant is awarded her costs on appeal. (Cal. Rules of Court, rule 27(a)(1).)

Scotland, P. J., and Cantil-Sakauye, J., concurred.

---

[1] We note that the court was apparently influenced to some degree by the minimal nature of the continued contact sought by the father. Nothing prevents the parties from entering into a postadoption contract agreement to allow such minimal contact while providing the security of adoption if it is in the minor's best interests. (Fam. Code, § 8616.5.)