#26068-a-GAS

**2012 S.D. 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

THE PEOPLE OF THE STATE OF SOUTH DAKOTA
IN THE INTEREST OF P.S.E., CHILD,
AND CONCERNING M.A.S., RESPONDENT.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFF W. DAVIS
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANN M. HOLZHAUSER
Special Assistant Attorney General
Department of Social Services          Attorneys for appellee
Pierre, South Dakota                   State of South Dakota.

DANA L. HANNA                          Attorney for appellant
Rapid City, South Dakota               Father, M.A.S.

* * * *

CONSIDERED ON BRIEFS
ON MAY 17, 2012

OPINION FILED **06/20/12**

#26068

SEVERSON, Justice

[¶1.] M.A.S. (Father) appeals termination of his parental rights to P.S.E. At the time P.S.E. was removed from Mother's care, Father lived in California and did not know he had a child in South Dakota. The Indian Child Welfare Act (ICWA) applies to these proceedings because P.S.E. is an enrolled member of the Fort Peck Sioux Tribe. Father argues that the Department of Social Services (DSS) did not make active efforts to reunite the Indian family and that any efforts made were successful. Because the evidence presented shows that DSS provided active and reasonable, albeit abbreviated, efforts to place P.S.E. with Father, and those efforts were unsuccessful, the order is affirmed.

FACTS

[¶2.] On June 19, 2009, DSS took P.S.E. (DOB 6/2/2008) into temporary protective custody. Mother had a PBT over .20 and no sober caretakers were available. At some point, Mother told DSS that Father was P.S.E.'s father. Father lived in California, unaware he had a child in South Dakota.

[¶3.] At an adjudicatory hearing, Mother admitted neglecting P.S.E. At a later hearing, Father acknowledged that he had not known of P.S.E. until contacted by DSS and that he was not domiciled with P.S.E. Based on this acknowledgement, the trial court determined that Father had not provided care and support for the child through no fault of Father.

[¶4.] At the time of Father's adjudicatory hearing, DSS's stated goal was to foster a relationship between P.S.E. and Father. The ultimate goal was placement

-1-

with Father. Toward this end, DSS requested California Department of Social Services (CDSS) complete a homestudy at Father's Tipton, California home.

[¶5.] Before placement of P.S.E. with Father would be authorized, the California homestudy required three things of Father: that he complete alcohol education classes; take an assessment to determine whether he should enroll in anger management classes; and take parenting classes. On June 18, 2010, nine months after receiving the California homestudy, DSS completed an initial case plan with Father. The case plan incorporated the three objectives listed in the California homestudy, modified to require Father to enroll in anger management and parenting classes.

[¶6.] DSS requested a second California homestudy in September 2010, but CDSS refused to conduct the homestudy. Father's children that had been residing with him (California children) had been removed due to allegations of physical abuse at the hands of their mother, with whom Father lived. With these allegations pending, California would not perform a homestudy on Father's home. Therefore, at the time of the dispositional hearing, a California homestudy approving placement with Father had not been completed.

[¶7.] On March 21, 2011, a final dispositional hearing was held regarding Father. (Mother's rights had previously been terminated and she did not appeal termination.) Testimony from the DSS caseworker assigned to the case established that Father had completed alcohol education classes and enrolled in parenting classes. Father testified that he had enrolled in anger management classes shortly before the dispositional hearing.

[¶8.]    Father's testimony also revealed that his California children were still in the custody of CDSS.  In order to regain custody, CDSS required Father to obtain "outpatient treatment, a batterer's program, anger management program, parenting classes, and AAs."  Father indicated this list of requirements may not be exhaustive, and that this process would take time.  "They keep on adding as they go.  They also told me it's going to be hard for you to work or do anything because I can't live on the income I have."  When asked if he was ready for P.S.E. to go to California with him, he testified that he would like to complete the California program first.  He did not know how long the California program would take.

[¶9.]    The trial court found that DSS had provided active efforts to prevent the breakup of the Indian family and terminated Father's parental rights.   Father appeals, challenging the determination that "active efforts" were made and that those efforts were unsuccessful.

[¶10.]    **Issue # 1: Whether the trial court erred by not entering a finding of fact that the efforts provided by DSS were unsuccessful.**

[¶11.]    Father first presents a question regarding interpretation of ICWA.  25 U.S.C. § 1912(d) provides:

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

Whether this section requires an explicit finding of fact that the efforts provided were unsuccessful is a question of statutory interpretation reviewed de novo.  *See AFSCME Local 1025 v. Sioux Falls Sch. Dist.*, 2011 S.D. 76, ¶ 11, 809 N.W.2d 349,

352. Father argues that because the trial court did not enter a specific finding of fact indicating the efforts of DSS had proven unsuccessful, termination was improper. Father provides no authority for the proposition that this statute requires a finding explicitly expressing the court's satisfaction that the efforts to prevent the breakup of the Indian family were unsuccessful. Father focuses on the "shall satisfy the court" language. The statute requires this satisfaction, but an explicit factual finding on the issue is not required.

[¶12.] This Court has upheld termination of parental rights to an Indian child in the absence of a finding of fact that the active efforts requirement of § 1912(d) had been met.

> Indeed, the trial court did not specifically find that these post December 2 efforts constituted "active efforts."
> . . . .
> In conclusion, although the circuit court erroneously ruled that ASFA's aggravated circumstances eliminated the need to provide active efforts to reunite the father with his son after December 2, 2002, the fact is that DSS continued to make those efforts.

*People ex rel. J.S.B., Jr.*, 2005 S.D. 3, ¶¶ 24, 29, 691 N.W.2d 611, 620-21.

[¶13.] In addition to the active efforts requirement, the trial court must also be satisfied that the efforts provided to prevent the breakup of the Indian family were unsuccessful. 25 U.S.C. § 1912(d). The trial court's oral pronouncement following the dispositional hearing was incorporated by reference into the findings of fact and conclusions of law. While not specifically saying that the efforts of DSS to prevent the breakup of the Indian family were unsuccessful, the substance of the findings and conclusions, including those made orally following the hearing,

demonstrate the trial court's satisfaction that the efforts were unsuccessful. The lack of the precise language used by the statute does not mandate reversal.

[¶14.] **Issue # 2: Whether the evidence presented established beyond a reasonable doubt that DSS made active efforts to provide remedial services and rehabilitative programs to Father and that those efforts were unsuccessful.**

[¶15.] Father next attacks the merits of the findings required by § 1912(d), asserting that the evidence does not establish that DSS provided "active efforts." Whether active efforts were provided under ICWA is a mixed question of law and fact subject to de novo review. *J.S.B.*, 2005 S.D. 3, ¶ 24, 691 N.W.2d at 620. The facts presented provide a very close question on this issue.

[¶16.] As noted above, § 1912(d) requires satisfying the trial court that active efforts were made, and that those efforts were unsuccessful. In abuse and neglect proceedings in which ICWA does not apply, DSS must establish that "reasonable efforts" have been made to return the child to the parent. SDCL 26-8A-21. The trial court found that DSS made reasonable and active efforts to prevent removal of P.S.E. from the home and "since her removal the Department of Social Services has made reasonable efforts to reunite the minor child with the Respondent parents." Father argues that the active efforts required by ICWA is a heightened standard compared to the reasonable efforts required by state law, but that the record does not support a finding of either reasonable or active efforts. The State takes the position that "active efforts" and "reasonable efforts" are synonymous, and that such efforts were made.

[¶17.] This Court has not addressed the relationship between active efforts as required by ICWA and reasonable efforts as required by South Dakota Codified

Law.  But this Court differentiated the active efforts requirement of ICWA from the reasonable efforts requirement of the Adoption and Safe Families Act (ASFA).  "Importantly, the concept of 'active' efforts pursuant to ICWA is distinguished from 'reasonable' efforts as required by [ASFA]."  *People ex rel. J.I.H.*, 2009 S.D. 52, ¶ 20, 768 N.W.2d 168, 173 (citing *J.S.B.*, 2005 S.D. 3, ¶ 17, 691 N.W.2d at 617).  This Court's decision in *J.I.H.* did not hinge on whether or not active efforts were provided, but whether the efforts provided were unsuccessful.  *Id.*

[¶18.]　　　Both Father and the State suggest the Court take this opportunity to determine whether a distinction exists between active and reasonable efforts.  Father argues that active efforts require more than reasonable efforts, while the State argues the terms are synonymous.  Courts considering this issue have recognized a split of authority.  Father's position is the clear majority, while two courts have ostensibly taken the State's position.  "The majority of jurisdictions that have considered the issue hold that the active efforts requirement 'sets a higher standard for social services departments than the reasonable efforts required by state statutes.'"  *State ex rel. C.D.,* 200 P.3d 194, 205 (Utah Ct. App. 2008) (quoting *In re J.S.,* 177 P.3d 590, 593 (Okla. Civ. App. 2008)[1]).  Interestingly, the Oklahoma

---

1.　　　Considering the plain language of § 1912(d) and the policy behind ICWA, especially Congress' intent to achieve uniformity among the states where the interests of Indian children, parents and tribes are concerned, we decline to follow the minority and instead join the majority of other states' courts which have interpreted ICWA and held that the 'active efforts' standard requires more effort than the 'reasonable effort' standard in non-ICWA cases.

　　　*J.S.*, 177 P.3d at 593-94 (footnote omitted).

court includes South Dakota among the jurisdictions adopting the majority view. *J.S.*, 177 P.3d at 593 n.6 (citing *J.S.B.*, 2005 S.D. 3, 691 N.W.2d 611). As noted above, however, *J.S.B.* recognized a distinction between ICWA's active efforts and ASFA's reasonable efforts, without holding that the active effort requirement of ICWA imposed a higher standard than the reasonable efforts of the relevant state statutes. 2005 S.D. 3, ¶ 17, 691 N.W.2d at 617. Even without including South Dakota in the group, the clear majority of courts that have considered the issue have determined that active efforts means more than reasonable efforts.[2]

[¶19.] The majority view relies on the distinction between active and passive efforts. "The term active efforts, by definition, implies heightened responsibility compared to passive efforts. Giving the parent a treatment plan and waiting for him to complete it would constitute passive efforts." *In re A.N.,* 106 P.3d 556, 560 (Mont. 2005). *See also C.D.*, 200 P.3d at 206 ("We join the majority of courts considering this issue that have held that the phrase active efforts connotes a more involved and less passive standard than that of reasonable efforts."). To borrow the metaphor of the Oklahoma Court of Appeals: "active efforts requires leading the horse to water" as opposed to pointing in the direction of the water. *J.S.*, 177 P.3d at 594 (internal quotation marks omitted).

---

2. *See Winston J. v. Alaska Dep't of Health and Soc. Servs.*, 134 P.3d 343, 347 n.18 (Alaska 2006); *In re J.L.,* 770 N.W.2d 853, 863-65 (Mich. 2009); *In re Welfare of Children of S.W.,* 727 N.W.2d 144, 150 (Minn. Ct. App. 2007); *In re A.N.,* 106 P.3d 556, 560 (Mont. 2005); *In re Interest of Dakota L.,* 712 N.W.2d 583, 594 (Neb. Ct. App. 2006); *J.S.,* 177 P.3d at 593; *C.D.,* 200 P.3d at 206.

[¶20.]     California and Colorado follow the minority view.[3] "Thus, while the court must make a separate finding under section 1912(d), the standards in assessing whether 'active efforts' were made to prevent the breakup of the Indian family, and whether reasonable services under state law were provided, are essentially undifferentiable." *In re Michael G.*, 63 Cal. App. 4th 700, 714 (Cal. Ct. App. 1998). A close reading of the case credited with articulating the minority position leads to the conclusion that any perceived distinction between the majority and minority position may be a distinction without a difference. Before declaring the equivalence between active and reasonable efforts, the California court distinguished active efforts from passive efforts. *Id.* at 713-14.[4] The determination that active efforts and reasonable efforts were "undifferentiable" resulted from

---

3.     "Our research reveals only two states which have concluded that ICWA's 'active efforts' requirement is equivalent to the state's 'reasonable efforts' to provide reunification services in a non-ICWA case[]." *J.S.,* 177 P.3d at 593 (citing cases from California and Colorado).

4.          To satisfy the requirements of subdivision (d) of section 1912, "active" remedial and rehabilitative efforts must be directed at remedying the basis for the parental termination proceedings, and thus the types of required services depend upon the facts of each case. Some courts have interpreted the federal standard to require that child protective services affirmatively prove all "reasonable" efforts to provide the parents with rehabilitative services have been exhausted. One commentator on the ICWA has drawn the following distinction between active and passive efforts: ". . . passive efforts entail merely drawing up a reunification plan and requiring the 'client' to use 'his or her own resources to [ ] bring[ ] it to fruition.' Active efforts, on the other hand, include 'tak[ing] the client through the steps of the plan rather than requiring the plan to be performed on its own.'"

          *Id.* (alterations in original) (internal citations omitted).

California's heightened view of "reasonable efforts" rather than a definition of "active efforts" failing to distinguish passive efforts. *Id.*[5] Therefore, even the minority position on this issue seems to require active efforts as opposed to reasonable efforts which could be merely passive efforts. *See id.* ("The *effort must be made* to provide suitable services, in spite of the difficulties of doing so or the prospects of success." (emphasis added)).

[¶21.] The Colorado opinion adopting the minority position cites a California decision and offers no independent rationale for its decision. *State ex rel. K.D.,* 155 P.3d 634, 637 (Colo. App. 2007) ("'Active efforts' are equivalent to reasonable efforts to provide or offer a treatment plan in a non-ICWA case and must be tailored to the circumstances of the case." (citing *In re Adoption of Hannah S.*, 142 Cal. App. 4th 988, 998 (Cal. Ct. App. 2006) (citing *Michael G.*, 63 Cal. App. 4th at 713-14))). The California decision cited by the Colorado court cites *Michael G.* as authority for this

---

5.        While California law does not expressly require "active efforts" to preserve the family, it has been observed: "It is difficult, if not impossible, to exaggerate the importance of reunification in the dependency system. With but few exceptions, whenever a minor is removed from parental custody, the juvenile court is required to provide services to the parent for the purpose of facilitating reunification of the family. Each reunification plan must be appropriate to the parent's circumstances. The plan should be specific and internally consistent, with the overall goal of resumption of a family relationship." "A 'mechanical approach' to a reunification plan is not what the Legislature intended: '[s]uch a plan must be appropriate for each family and be based on the unique facts relating to that family.' The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of success."

    *Id.* at 714 (alteration in original) (internal citations omitted).

proposition which, as discussed above, calls into question any appreciable difference between the majority and minority views. *Hannah S.*, 142 Cal. App. 4th at 998.

[¶22.] While the State cites California and Colorado as jurisdictions holding that active efforts are equivalent to reasonable efforts, this is a tenuous position. The majority view may be the only view finding legitimate support in other jurisdictions. And the majority view furthers the Congressional purpose of ICWA.[6] We join the majority of jurisdictions that have considered the issue and hold that the "active efforts" requirement of § 1912(d) imposes a higher standard than the "reasonable efforts" of SDCL 26-8A-21. Insofar as purely passive efforts could satisfy the reasonable efforts standard of SDCL 26-8A-21, they would not satisfy the "active efforts" required by ICWA. We next consider whether the efforts provided by DSS were both active and reasonable in this case.

[¶23.] DSS informed Father of P.S.E. in July or August 2009. Father attended the January 2010 adjudicatory hearing in South Dakota, in person. At that time, Father informed DSS that he wished to be considered a placement option for P.S.E. That same month, CDSS, on request from DSS, conducted a homestudy of Father's California home. The study concluded that Father would be a suitable

---

6.          [W]hen interpreting a statute pertaining to Indians, the United States Supreme Court has stated, 'statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit . . . .' *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766, 105 S. Ct. 2399, 2403, 85 L. Ed. 2d 753 (1985)[.] As Congress found when it enacted ICWA, it is to the benefit of Indian children to remain within their families and only after 'active efforts' to reunite those families have proven unsuccessful should the children be removed.

*See J.S.B.,* 2005 S.D. 3, ¶ 21, 691 N.W.2d at 619 (internal citation omitted).

caretaker if he realized three goals. Without an acceptable California homestudy, the Interstate Compact on Placement of Children (ICPC) would not allow P.S.E. to be placed with Father in California. SDCL 26-13-1, art. III. An initial case plan regarding P.S.E. was completed with Father and DSS on June 18, 2010. The three goals mentioned in the California homestudy were included in the initial case plan.

[¶24.] In arguing that active efforts were not made, Father chastises DSS for not "work[ing] with" CDSS to help Father find, arrange, and pay for the classes he needed to take to satisfy the DSS case plan. Although not to Father's satisfaction, this is what DSS did. At trial, Michael Wright, the DSS caseworker, testified as to the efforts provided by DSS toward realizing placement with Father. Wright testified that DSS paid $505 to Father's DUI program to allow Father to complete those classes. Wright telephoned an individual in California and had that individual provide Father a list of free parenting classes that would satisfy the requirement of the case plan. Wright mailed stamped envelopes to Father so that he could send mail to P.S.E.

[¶25.] While these efforts cannot be considered herculean, they are active as opposed to passive. Those courts discussing active efforts distinguish passive efforts by providing an example of passive efforts. "Giving the parent a treatment plan and waiting for him to complete it would constitute passive efforts." *A.N.*, 106 P.3d at 560. Here, DSS did more than that. When notified that Father needed money to complete his DUI classes, DSS paid for Father's DUI classes. Wright actively sought out and found an individual in California who could provide Father with parenting classes. DSS also actively made preparations with P.S.E. for future

placement with Father. A visit between Father and P.S.E. was videotaped so the foster parents could watch the video with P.S.E. to familiarize her with Father. While the distance separating the parties may have limited the role DSS was able to play, they actively assisted Father in working toward placement in his home.

[¶26.] Given the circumstances, the efforts of DSS were also reasonable. Again, the geographic distance cannot be overlooked—Father was financially unable to travel to South Dakota to attend visitation. Father insists DSS should have been required to pay for his travel expenses. Wright testified that DSS did not have funds available for that, but he informed Father that if he could come to South Dakota, DSS could reimburse him for hotel expenses. And DSS paid $505 for Father to complete his DUI classes. Under the circumstances, the efforts provided by DSS toward placement of P.S.E. with Father were both active and reasonable.

[¶27.] As with the first issue, the lack of an explicit finding that active efforts were made does not mandate reversal. *See J.S.B.*, 2005 S.D. 3, ¶¶ 24, 29, 691 N.W.2d at 620-21. This Court can look to the record to determine whether active and reasonable efforts were made. *Id.*

[¶28.] Father next argues that the efforts of DSS, as they were, were not unsuccessful as required by § 1912(d). By the time of the dispositional hearing, Father had completed DUI classes, enrolled in parenting classes, and by his testimony, enrolled in anger management classes. Father argues that these were the requirements of the DSS case plan and he has completed these tasks. While this is true, Father is no closer to being a suitable placement for P.S.E. than he was at the time the initial case plan was completed.

[¶29.]     The California homestudy was requested and completed because the ICPC prohibits placement outside of South Dakota without approval by the receiving state. *See* SDCL 26-13-1. Here, before P.S.E. could be placed with Father, California would have to provide a satisfactory homestudy. At the time of the dispositional hearing, Wright testified that California would not complete a second homestudy because Father's California children had been removed from his home. Father confirmed removal of his California children. California's inability to conduct a homestudy provides an objective determination of the lack of success of the efforts designed to accomplish placing P.S.E. with Father. Father testified that in order to have his California children returned, he was required to undergo all the classes mentioned in his initial case plan with South Dakota DSS. And Father testified that he did not feel ready to have P.S.E. in his home until that program was complete, although he had no idea how long that would take. The efforts of DSS were unsuccessful in making progress toward accomplishing the ultimate goal—placement of P.S.E. with Father.

[¶30.]     Father relies on *J.I.H.*, an ICWA case in which this Court reversed termination of a father's parental rights because "there was no evidence that DSS's efforts were unsuccessful or that they failed, even though they were limited by Father's incarceration." 2009 S.D. 52, ¶ 20, 768 N.W.2d at 173. But here, evidence of the failure of the efforts was presented. Father could not receive placement of P.S.E. without a satisfactory homestudy from CDSS. He could not get the satisfactory homestudy before completing the program put in place by CDSS as a

result of the removal of his California children. Father is no closer to being a placement option for P.S.E. than he was when the services provided by DSS began.

[¶31.] Further, in *J.I.H.*, the record established that an option less severe than termination was available. "The record indicates that Grandmother was willing to be a long-term placement option for these children." *Id*. ¶ 23. No such alternative is presented by this record. The only alternative argued for by Father is more time.

[¶32.] **Issue # 3: Whether termination was the least restrictive alternative available.**

[¶33.] "Our standard of review is 'whether the trial court's ultimate finding—that clear and convincing evidence indicated termination was the least restrictive alternative commensurate with the child's best interests—was clearly erroneous.'" *People ex rel. L.S.*, 2006 S.D. 76, ¶ 36, 721 N.W.2d 83, 94. "The best interests of the child are viewed from the child's, not the parents', perspective." *In re A.S.*, 2000 S.D. 94, ¶ 19, 614 N.W.2d 383, 386.

[¶34.] Here, even though Father has made efforts, they have been unsuccessful. Those efforts have resulted in no positive movement toward placement of P.S.E. with Father. While perhaps Father could one day make enough progress so that a successful California homestudy could be completed and P.S.E. could live with Father, there is no indication this will happen any time soon. And since the inception of Father's involvement in this matter, he has made no progress. P.S.E. should not be required to wait for Father to develop parenting skills that may never materialize. *See In re Z.Z.*, 494 N.W.2d 608, 610 (S.D. 1992). P.S.E. has lived in foster care, where, by all reports, she is flourishing, since her removal in

2009 at the age of 12 months. The record indicates that her foster parents wish to adopt her. Her tribe has sent correspondence urging adoption by the foster parents. The trial court's determination that termination was the least restrictive alternative commensurate with P.S.E.'s best interests was not clearly erroneous.

## CONCLUSION

[¶35.]      DSS provided Father with active, reasonable efforts toward placement of P.S.E. with him in California. Those efforts were unsuccessful at achieving any progress toward that goal. The trial court did not err in finding that the least restrictive alternative was termination. The order terminating Father's parental rights is affirmed.

[¶36.]      GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.