Filed 12/16/14  T.G. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| T.G.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>        Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU et al.,<br><br>        Real Parties in Interest. | A143118<br><br>(Contra Costa County<br>Super. Ct. Nos. J13-00956,<br>J13-00957) |

**MEMORANDUM OPINION[1]**

Petitioner seeks further family reunification services and a stay of the scheduled hearing to approve a permanent plan for her children, R.C. and D.B.  We deny writ relief. Active efforts were made to reunify petitioner and her children, but she did not meet those efforts in kind.

**BACKGROUND**

Petitioner, T.G. (hereinafter mother), has had significant interactions with Children and Family Services departments in several counties dating back to 1991.  Her

---

[1]  We resolve this case by a memorandum opinion pursuant to California Standards of Judicial Administration, sections 8.1(1), (3).  (Cal.Stds.Jud.Admin., § 8.1(1), (3).)

1

older children were removed from her care after she failed to reunify with them after several years of services.

In August 2013, the Contra Costa Department of Children and Family Services (hereinafter County) filed juvenile dependency petitions concerning two of mother's eight children, two-year-old R.C. and 11-year-old D.B. The County alleged mother could not adequately supervise the youngsters because of an alcohol abuse problem and because she had remained in a relationship plagued by domestic violence. Specifically, mother reportedly kicked D.B. while drunk, was seen by D.B. being "terrible" and getting into fights while drunk, struck her "boyfriend" during a dispute (for which she arrested), and exposed her children to her lifestyle of prostitution. The County further alleged mother had left R.C. and D.B. with a family friend for approximately three months without providing direct financial support after the first month—she told the friend she was " 'going back to ho'ing' " and " 'going back to the streets,' " and eventually denied access to public money (including SSI and CalWorks funds) that were meant for the children. Based on mother's membership in the Standing Rock Sioux tribe, the County alleged R.C. and D.B. may be members of, or eligible for membership in, that tribe.

At the contested jurisdictional hearing on September 13, 2013, the juvenile court found the allegations of the dependency petitions, as amended, to be true. At the contested dispositional hearing, in January 2014, the juvenile court found R.C. and D.B. to be dependent children and ordered reunification services for mother.

Under the plan for services, mother was required to "enter and successfully complete individual counseling approved by the social worker, and receive a positive evaluation from therapist that parent understands the factors contributing to [her] dependency [and] has successfully addressed those issues." She was also required to participate in counseling "to address trauma, loss and other emotional triggers that contribute to her alcohol dependence." Finally, she was required to participate in family counseling directed, in part, at enhancing communication skills and managing anger.

According to a July 7, 2014 status review report, mother finally began an outpatient substance abuse treatment program at Ujima West in February 2014. Through

2

Ujima West, mother was also "receiving individual therapy sessions." On May 13, however, mother's case manager at Ujima West reported mother had been out of contact since May 8. Dr. Frank, who had been supervising mother's participation in a domestic violence program, also reported mother's absence. On May 27, he remarked mother is " 'very damaged' " and " 'needs a ton of work and really should be doing individual counseling.' "

In the meantime, from December 2013 to March 2014, mother had had several visits with R.C. But due to concerns about inappropriate behavior and R.C.'s tantrums following the visits, these visits were stopped. Starting in April 2014, an Alternative Family Services clinician arranged for mother and R.C. to meet in "therapeutic" visitations. Mother missed all four scheduled visits, even though all were scheduled in mother's city of residence. No further visits with R.C. were offered. D.B. refused contact with mother.

Mother's whereabouts remained unknown for several months until August 2014, when she reemerged and contacted her social worker. Although she no longer was in the local area and found contact with the County to be too stressful, she wanted to resume reunification services. About a week-and-a-half later, mother returned to the area and to treatment at Ujima West.

On August 22, the County prepared an updated case plan. It listed adoption as the goal for R.C. and D.B. Noting the lengthy gap in mother's treatment program at Ujima West, it also documented mother's failure to make progress with individual or family therapy, and other requirements of her plan.

After several continuances, a review hearing took place on September 12, 2014, nearly 12 months after the juvenile court took jurisdiction. In a written update prepared for the hearing, the County reported mother had been struggling at Ujima West since her return. She had angry outbursts, was reacting impulsively, and was ignoring suggestions from her counselor. The Ujima West program coordinator had stated, on August 29, mother "could benefit from a mental health evaluation." On September 11, mother tested positive for alcohol.

3

At the September 12 hearing, the juvenile court heard from mother. She testified she had, just in August, begun to request visitation with R.C. and D.B.; had, at some unspecified point, requested a psychological evaluation, but had not received one; and had not been given costs for traveling to visits with her children (even though the July 7, 2014, report states the County had been providing bus tickets, transportation stipends, and visitation transportation and scheduling). After hearing argument and considering the various written reports, the court ascribed minimal credibility to mother, found reasonable services had been offered or provided, and found "active efforts" had been made "to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, and that these efforts were unsuccessful." Further, it found there was not a substantial probability the children would be returned to mother, even within an extended reunification time. It therefore terminated reunification services and scheduled a hearing for January 7, 2015, to determine the children's permanent placement.

Mother promptly sought writ review.

## DISCUSSION

In accord with the Federal Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.), title 25 United States Code section 1912(d), "[s]ection 361.7, subdivision (a), [of California's Welfare and Institutions Code[2]] requires 'a party seeking . . . termination of parental rights over . . . an Indian child [to] provide evidence to the court that *active efforts* have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family . . . .' " (*C.F. v. Superior Court* (2014) 230 Cal.App.4th 227, 237 (*C.F.*), italics added; see *Adoptive Couple v. Baby Girl* (2013) __ U.S.__ [133 S.Ct. 2552, 2562].) Active efforts are "timely and affirmative" efforts, taking into consideration the relevant aspects of the Indian child's tribe and available tribal resources. (*C.F.*, *supra*, 230 Cal.App.4th at pp 239–240.)

---

[2] All further statutory references are to the Welfare and Institutions Code unless indicated.

Whether ICWA applies or not, "a court may not order a hearing pursuant to section 366.26" to terminate parental rights " 'unless there is clear and convincing evidence that *reasonable services* have been provided or offered to the parent or legal guardian.' (§ 366.21, subd. (g)(1), italics added.)" (*C.F.*, *supra*, 230 Cal.App.4th at p. 238.) To be reasonable, services must be tailored to the facts of the particular case. (*Adoption of Hannah S.* (2006) 142 Cal.App.4th 988, 998 (*Hannah S.*).)

Under California law, there is often no significant difference between the "active efforts" required by ICWA and the "reasonable services" regularly required under section 366.21. (*C.F.*, *supra*, 230 Cal.App.4th at p. 238; *Hannah S.*, *supra*, 142 Cal.App.4th at p. 998.) Though the juvenile court must make the separate finding of active efforts, "the standards in assessing whether 'active efforts' were made to prevent the breakup of the Indian family, and whether reasonable services under state law were provided, are essentially undifferentiable." (*In re Michael G.* (1998) 63 Cal.App.4th 700, 714.) Indeed, California's Welfare and Institutions Code has always required an " ' "effort . . . be made to provide suitable services, in spite of the difficulties of doing so or the prospects of success." ' " (*C.F.*, *supra*, 230 Cal.App.4th at p. 238; *In re Michael G.*, *supra*, 63 Cal.App.4th at p. 714.)

Especially when a juvenile court's finding on active efforts involves credibility determinations, as it did here, we review the finding for substantial evidence, meaning we review the record in a light most favorable to the trial court order and uphold the juvenile court's findings unless no rational factfinder could reach the same conclusion. (*C.F.*, *supra*, 230 Cal.App.4th at p. 239.)[3]

Mother claims there is no substantial evidence of active efforts, because the County failed to make visitation happen and because it left untreated the mental health

---

[3] Even if our review were independent, we would reach the same result in this case. (See *In re K.B.* (2009) 173 Cal.App.4th 1275, 1286 [citing authority from Alaska and suggesting when services rendered could be gleaned directly from record, "active efforts" would be a mixed question of law and fact reviewed independently]; but see *C.F.*, *supra*, 230 Cal.App.4th at p. 239 & fn. 8 [rejecting this approach as inconsistent with California's dependency law].)

issues underlying mother's unfitness as a parent.  Mother notes Dr. Frank's belief that mother " 'needs a ton of work and really should be doing individual counseling' "; the Ujima West coordinator's statement that mother "could benefit from a mental health evaluation"; and mother's own testimony that she once, at some unspecified point, requested a psychological evaluation.

The evidence the juvenile court credited, however, supports the court's finding of active efforts.  As to visitation, the evidence shows the County provided transportation costs and went to lengths to set up four therapeutic visits with R.C., but mother rejected those efforts.  Even though D.B. refused to meet with mother, the evidence shows County personnel met with D.B. to try and facilitate visitation.  That this was ultimately unsuccessful does not mean the County did not make active efforts.  Nor was the County required to meet mother's eleventh-hour request for visitation given the unlikelihood reunification could be accomplished within a reasonable time frame.  (See *In re Misako R.* (1991) 2 Cal.App.4th 538, 547 [services adequate if "reasonable under the circumstances" and need not be perfect]; *In re K.B.*, *supra*, 173 Cal.App.4th at p. 1288 [affirming conclusion of active efforts and holding active efforts does not require provision of services that would be futile]; see also *In re Julie M.* (1999) 69 Cal.App.4th 41, 47–48 [reasonable services provided when child opposed visits with mother and agency attempted to facilitate discussions between mother and child]; *id.* at p. 48 ["By her own volition, she avoided the services she was provided."].)

As to mother's mental health issues, the various County reports demonstrate mother was in fact provided individual therapy sessions but unilaterally discontinued them and, as Dr. Frank commented, left services from May to August, during the heart of her reunification period.  Thus, mother received individual therapy *before* she disengaged from services, and the therapy still could not help mother stay on track.

As for the Ujima West coordinator's statement, it was made just days before the September 12, 2014 review hearing.  Based on the poor reports the juvenile court heard about mother's return to Ujima West, the evidence supports the court's implicit conclusion the recommendation or request for the psychological evaluation had simply

6

come too late to get mother back on track in time to reunite with her children. Notably, the coordinator from Ujima West did not state a mental health evaluation was likely to lead to a timely correction of mother's problems. (See *In re K.B.*, *supra*, 173 Cal.App.4th at p. 1288 [active efforts does not require services that would be futile].) In sum, mother was provided ample opportunities to address her mental health needs but did not cooperate or meaningfully engage.[4]

## DISPOSITION

Mother's petition is denied on the merits. (§ 366.26, subd. (*l* )(1)(C); Cal. Rules of Court, rule 8.452(h); *In re Julie S.* (1996) 48 Cal.App.4th 988, 990–991.) Her request for a stay of the January 7, 2015, permanency hearing is denied. Our decision is final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

---

[4] We also note "offering services as to a later born child, after previous reunification efforts had failed, would be an idle act not required by ICWA" (*In re K.B.*, *supra*, 173 Cal.App.4th at p. 1284.) Mother's previous loss of her eldest children and her unsuccessful interactions with Children and Family Services further support the juvenile court's decision regarding the adequacy and likely success of efforts in this case.

7

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Margulies, J.